# Thomas *v.* The State.

## *Indictment for Robbery.*

1. *Sufficiency of indictment.*—An indictment which charges that the defendant "feloniously took one gun, of the value of $15, the property of R. Y., from his person, or in his presence, and against his will, by violence to his person, or by putting him in such fear as to unwillingly part with the same," "being substantially in the form prescribed by the Code" (Form No. 76, p. 276), is sufficient.

2. *Robbery; constituents of offense.*—A conviction can not be had for robbery, on evidence showing that the defendant obtained the possession of the property by fraud or artifice, and retained it by force or threats of violence; as when, meeting a youth with a gun in his hand, he asked to examine it with a view to purchasing it, and the gun being handed to him, with the remark that it was loaded, he pointed it at the owner, threatened to shoot if he did not run, and himself ran away with the gun when the owner had backed off some distance. (*James v. State,* 53 Ala. 380, overruled.)

FROM the Criminal Court of Jefferson.

Tried before the Hon. SAMUEL E. GREENE.

The indictment in this case charged, that the defendant, Press Thomas, "feloniously took one gun, of the value of $15, the property of Robert Yarborough, from his person, or in his presence, and against his will, by violence to his person, or by putting him in such fear as to unwillingly part with the same." The bill of exceptions states that the defendant demurred to the indictment, and that the demurrer was overruled; but the judgment-entry only recites that the cause was tried on issue joined on the plea of not guilty. The facts proved on the trial are stated in the opinion of the court. The defendant requested the general affirmative charge, and several special charges which, in substance, asserted the insufficiency of the evidence to authorize a conviction; and he excepted to the refusal of these charges.

B. M. ALLEN, for appellant, cited *Hanson v. State,* 43 Ohio St. 376; *Shinn v. State,* 64 Ind. 13; 1 Russ. Crimes, 873; 2 *Ib.* 108; 2 Archb. Crim. Pl. & Pr. 1289; 1 Hale's P. C. 434; 2 East's P. C. 726; Clark's Man. Crim. Law, § 741.

WM. L. MARTIN, Attorney-General, for the State, cited *James v. State,* 53 Ala. 380; *Crocker v. State,* 47 Ala. 53; *Johnson v. State,* 69 Ala. 219; *Evans v. State,* 80 Ala. 4; 2 East's P.

[Thomas v. The State.]

C. 712; 2 Russ. Crimes, 880; 1 Whart. Crim. Law, 9th ed., §§ 847, 849; 2 Bish. Crim. Law, § 1117.

McCLELLAN, J.—The indictment in this case is substantially in the form prescribed by the Code for the offense of robbery, and is sufficient.—Code, p. 276, Form 76; *Chappel v. State*, 52 Ala. 359.

The evidence on the trial was without conflict, to the effect that the possession of the property, the subject-matter of the alleged robbery, was obtained from the prosecutor by artifice, and without violence, or putting in fear; and that after the possession had been thus peaceably obtained, it was retained, and the property carried away, by putting the prosecutor in such fear as prevented any effort on his part to regain it. The bill of exceptions sets forth that the prosecutor and his brother, aged respectively fifteen and thirteen years, the former having a gun, met three men, including the defendant, in a road or street in the suburbs of Birmingham. "Two of the men passed on, while the defendant stopped, and engaged in conversation with Robert Yarborough [the prosecutor], in regard to purchasing the gun that said Robert Yarborough had in his hand. Said Yarborough voluntarily handed the gun to the defendant for examination, in obedience to the request of the defendant to be allowed to examine it; and the said defendant conversed with said Robert Yarborough about five minutes in regard to the gun, inquiring how the said gun was operated, and whether it was loaded. Being informed that the gun was loaded, the defendant then stepped back about ten steps, and said to Yarborough, 'Run, or I will shoot you,' pointing the gun at him." Yarborough did not run, but was frightened, and backed off some distance; and the defendant then ran away with the gun. The jury found the defendant guilty of robbery, and he was adjudged and sentenced accordingly. The rulings of the court on charges requested for the defendant were to the effect, that these facts constituted robbery; and whether they did or not, is the main inquiry arising on this appeal.

The authorities are well nigh uniform to the position, that the violence, or putting in fear, which is an essential element of the crime of robbery, must precede, or be concomitant with the act, by which the offender acquires the possession of the property. The offense is against both the person, and against property. In so far as it is against the person, it consists in personal violence, or personal intimidation. In so far as it is against property, it consists of manucaption *animo furandi*. If there be violence, or putting in fear, however aggravated, without a taking and asportation of property, there may be

an assault, or assault and battery, or an assault with intent to rob, but no robbery. On the other hand, if there be a taking by trick or contrivance, and carrying away with felonious intent, but no violence, or putting in fear, as a means of the caption of another's property, there is a larceny, but no robbery.—*Com. v. James*, 1 Pick, (Mass.) 375. The three essential elements of the offense are, felonious intent, force, or putting in fear, as a means of effectuating the intent, and, by that means, a taking and carrying away of the property of another from his person, or in his presence. In the nature of things, all these elements must concur in point of time, else the act done is not rounded out to the full measure of the capital felony. If force is relied on in proof of the charge, it must be the force by which another is deprived of, and the offender gains the possession. If putting in fear is relied on, it must be the fear under duress of which the possession is parted with. The taking, as it has been expressed, must be the result of the force or fear; and force or fear which is a consequence, and not the means of taking, will not suffice. "The fear of physical ill must come before the relinquishment of the property to the thief, and not after; else, the offense is not robbery."—2 Bish. Cr. Law, § 1175. "It may also be observed," says Archbold, "with respect to the taking, that it must not, as it should seem, precede the violence, or putting in fear, or rather, that a subsequent violence, or putting in fear, will not make a precedent taking, effected clandestinely, or without either violence or putting in fear, amount to robbery."—2 Archbold Cr. Pr. & Pl. p. 1289 ; also, 2 Russell on Crimes, p. *108; 1 Hale P. C. 534. "It must appear," says Roscoe, "that the property was taken while the party was under the influence of the fear ; for, if the property be taken first, and the menaces or threats inducing the fear be used afterwards, it is not robbery."—Roscoe's Crim. Ev., p. 924. And Mr. Wharton recognizes the same doctrine.—1 Whar. Cr. Law, § 850.

The adjudged cases fully support these texts. In an early case, the facts were, that the prisoner desired the prosecutor to open a gate for him, and, while he was so doing, the prisoner took his purse. The prosecutor, seeing it in the prisoner's hand, demanded it, when the prisoner answered : "Villian, if thou speakest of thy purse, I will pluck thy house over thine ears, and drive thee out of the country, as I did John Somers," and then went away with the purse ; and because he did not take it with violence, or put the prosecutor in fear, it was ruled to be larceny, and no robbery, for the words of menace were used after the taking of the purse.—*Rex v. Harman*, 1 Hale's

[Thomas v. The State.]

P. C. 534. See, also, *Rex v. Grey*, 2 East's P. C. 708; and *Rex v. Gnosil*, 1 Car. & P. 304, in which it is said by Garrow, B.: "To constitute the crime of highway robbery, the force used must be either before, or at the time of the taking." In the case of *Shinn v. State*, 64 Ind. 13, it appeared that an accomplice of the defendant snatched money from the prosecutor, and handed it to the prisoner, who attempted to make off with it, but was pursued and overtaken by the prosecutor, when a tussle ensued between all three of them for the possession of the money. Mere snatching property from another is by all the authorities not robbery. Hence, in this case, the force had to be predicated of the tussle, which occurred *after* the defendant had acquired the possession. It was held, that force thus used subsequent to the taking, in an effort to retain the wrongful possession acquired by snatching, was not such force as is essential to the crime of robbery. The court said: "The evidence tended to show the fraudulent and felonious obtaining of money from the prosecuting witness by means of a previously arranged trick or contrivance, but did not sustain the charge of robbery contained in the indictment;" citing *Huber v. State*, 57 Ind. 341; and to like effect is the case of *Hanson v. State*, 43 Ohio St. 376.

"Robbery," says the Supreme Court of Arkansas, "is defined to be a felonious taking of money or goods from the person of another, or in his presence, against his will, by violence, or putting him in fear. And this violence must precede or accompany the stealing."—*Clary et al. v. State*, 33 Ark. 561. And the same doctrine is held substantially in the following cases: *People v. McGinty*, 24 Hun, 62; *State v. Jenkins*, Mo. 372; *State v. Deal*, 64 N. C. 270; *State v. John*, 69 Amer. Dec. 777; *State v. McCune*, 70 Amer. Dec. 176, *notes* 178.

We have discussed this point more at large than we should otherwise have done, because we are constrained, in following the very numerous authorities that have been cited, there being none outside of this State to the contrary, it is believed, supporting, as they clearly do, the sound doctrine in this connection, to overrule a case decided by this court in 1875, in which it was held that one having the actual possession of the property of another, might yet be guilty of robbery in respect to it, by using violence on the person of the owner, not to take possession, but to make off with the property. The case referred to is that of *James v. State*, 53 Ala. 380. The facts were, that the defendant and one Hardy were travelling together on foot, and Hardy handed certain articles contained in a bag to defendant, to be carried for him. They proceeded some distance in this way, when the defendant " took a step

[Thomas v. The State.]

backwards, and struck witness behind on his neck, knocking him down and insensible;" and when Hardy recovered consciousness, the defendant was gone, and also the articles, which he had been carrying for Hardy. MANNING, J. delivering the opinion, said : "Up to the time of the blow, there was no appropriation of these articles by the defendant, or denial of the property of witness in them. They were in the presence, and constructively in the possession of witness. The defendant may have well supposed he could not get away with them, they being heavy, without first knocking down and disabling their owner. And although they were in the hands of the defendant, carried by him at the request of the owner, they were not taken from him, he being constructively in possession, and they being in his presence, as his property, until he was stricken by defendant and knocked down. The violence was not done after the goods were taken away, but they were taken away after and by means of the violence to the person of the owner." No authorities are cited to these propositions; and it is believed none can be found in the books. The chief fault of the opinion lies in the assumption, that the crime of robbery may be committed against such constructive possession as a man has through his agent. We do not so understand the law. The offense is against the actual possession, in the very nature of things. The person offended against must have either the manucaption of the property, or it must at least be in his presence, *and under his direct physical, personal control ;* and the taking, which is an essential element of the crime, must amount to the transfer of this manucaption or personal control, by force or through fear, from the owner into the criminal. How is it possible for this to be done when this actual possession is already in the offender? How can he take from the owner that which he already had, and the owner has not? An English case will serve to illustrate the point. It is very like the *James case* in respect to the application of the principle we are considering. "A. and B. were walking together, B. carrying A.'s bundle, when C. and D. came up and assaulted A. B. threw down the bundle, and ran to the assistance of A., when C. took it up and made off with it. C. and D. were indicted for robbery, A. being the prosecutor : *Held,* that they could not be convicted of robbery, as the thing stolen was not in *the personal custody* of the prosecutor;" *Vaughan, B.,* observing, that "the indictment was not sustainable, as the bundle was in the possession of another person at the time when the assault was committed."—*Rex v. Fallows et al.,* 5 Car. & P. 508. This case manifestly proceeded on the ground, that the force was applied to A, while B had

the actual possession of the property, and that no force or putting in fear was resorted to to gain possession of the bundle after B. had thrown it down. We do not doubt that, after its relinquishment by B., if left in the presence of A., the latter had such possession as that to take it away by such force, or the putting in such fear, as to prevent or overcome his resistance, would have been robbery. But nothing of that sort characterized the case at bar, or the *James Case;* and the principle involved in *Rex v. Fallow* is the same as that which we are considering. The learned judge, who delivered the opinion in *James' Case* also, it seems to us, fell into the error of confounding *asportation* with *taking.* It is quite clear, on the facts of that case, that there was no taking in the sense necessary in robbery, but only a "taking away," that is a making off with property; and it is equally clear from the language we have quoted, that the violence was used, not to effect a "taking"— not to get physical control of the property—that James already had without resort to either violence or putting in fear—but to enable him to escape, and to carry with him property which he had not taken from the owner, but which had been voluntarily placed in his hands. We can not follow the *James Case;* but, receding from it, we hold, in consonance with the authorities cited, and with what we conceive to be eminently sound in principle, that violence or putting in fear, to constitute the essential factor in the crime of robbery, must precede, or be concomitant with, the taking of the property from the possession of the owner; and that no violence, no excitation of fear, resorted to merely for the purpose of keeping a possession already acquired, or of escaping after the possession has been acquired, will supply the element of force which is an essential ingredient of this offense.

Some of the rulings of the trial court, doubtless based on and induced by *James' Case, supra,* are erroneous under the view we have taken; and the judgment below will therefore be reversed, and the cause remanded.

Reversed and remanded.

