(130 So. 904)

## LOUIS v. STATE.

### 8 Div. 256.

Court of Appeals of Alabama.

Nov. 18, 1930.

J. N. Powell, of Falkville, for appellant.

Charlie C. McCall, Atty. Gen., and Merwin T. Koonce, Asst. Atty. Gen., for the State.

BRICKEN, P. J.

Because of the unusual nature and character of this case, the court has deemed it advisable to read the entire record sitting en banc; and to likewise give to it the consideration of the entire court.

This appellant was indicted for the offense of robbery. He was convicted as charged and his punishment fixed by the jury at imprisonment for ten years. In accordance with this verdict he was duly sentenced to the penitentiary.

In the case of Douglass v. State, 21 Ala. App. 289, 107 So. 791, 793, this court defined the offense here involved, and no elaboration of what was there said is necessary. In that case the court said:

"There is no statutory robbery in this state. The common law prevails in Alabama as to this offense; and robbery, at common law, is an offense against both person and property, and is briefly defined as the felonious taking of money, or goods of value, from the person of another, or in his presence, by violence to his person, or by putting him in fear. The only statute on the subject of robbery in this state is section 5460 of the Code of 1923, and this statute merely prescribes the punishment for the commission of the common-law offense."

The question of material moment here therefore is: Did this appellant feloniously take the money in question from the person of Rosie Toney, the alleged injured party, or in her presence, by violence to her person, or by putting her in fear?

On the trial the state relied upon the testimony of the alleged injured party for a conviction. There is no contention that any violence was committed upon the person of Rosie Toney by appellant or by any one else upon the occasion of the alleged robbery, and no evidence in the case to that effect. The

case failing in this essential ingredient of the offense of robbery, the next question presented is: Was the money feloniously taken from her, or in her presence by appellant as a result of her having been put in fear? In this connection Rosie Toney testified she was not "scared" when she went into the banks and got the money, at the insistence or request of appellant, and returned to where he was and handed it to him. The trend of her testimony was to the effect that on the day in question she saw this appellant with two other men. That she had never seen him before, and that "he hypnotized her, or put her under a spell." That she stayed with him all day and at his request got her bank books from her home some two miles, or more, from the banks where her money was on deposit, and went into the banks unaccompanied; withdrew her money therefrom, amounting to about $290, and returned to where appellant was waiting and handed him her money. In appellant's brief the following statement and insistence appears: "In this case we have no evidence that the property or money was taken from Rosie Toney through fear, to the contrary, Rosie Toney, on page 13 of the record in this case, positively states in answer to the solicitor's question which is as follows: 'You were scared while you were in both banks?'. Rosie Toney's answer: 'No sir.' On page 15 of the record we find where this witness in response to the following question by the court answered: 'Did you say anything about he had you hypnotized?' The witness answered: 'I said I must have been hypnotized or something.' And on page 21 of the record W. E. Shakelford, a witness, called by the state, testified that Rosie Toney said she was hypnotized and the whole record of the State's evidence by the witness, Rosie Toney, shows that she was not scared, frightened or put in fear at the time she parted with her money but that she willingly went to her home and got her bank book and visited two different banks in the absence of the appellant and drew her money out of the bank to where the appellant was and gave him the money in question and that she said in response to the question by counsel for the appellant that she was not scared when she gave the appellant the money."

Reference to the standard authorities at our command do not show in any instance that "fear" is an element of hypnotism. The best definition we have at hand of "hypnosis," or "hypnotism," is found in Webster's New International Dictionary, p. 1059.

2 Words and Phrases, Second Series, p. 926, contains the following definition: "'Hypnotism' is defined to be a name applied to a condition, artificially produced, in which the person hypnotized, apparently asleep, acts in obedience to the will of the operator; and we are told by the authorities upon the science that upon awakening there may be a vivid recollection of all that happened during the apparent sleep."

No "violence to the person" of Rosie Toney having been shown, and the other essential ingredient of robbery, "fear," not being superinduced, as has been shown, by the alleged hypnotism, the next question to be considered relates to the statement of the injured party wherein she testified, "he put me under a spell." We take it that term "spell" as here used is synonymous with the word "spellbind" or, "spellbound," which physical state or condition is defined to be: "To bind or hold by or as if by a spell or charm; to fascinate; charm." "Bound by or as by a spell; fascinated."

After a careful attentive consideration of this case as presented by the whole record, we are forced to conclude that the evidence failed to establish the offense of robbery, and hence the judgment of conviction from which this appeal was taken cannot be permitted to stand. Certainly, if the appellant did feloniously take from the alleged injured party the money in question, as testified to by her, he would be guilty of some offense; one that is probably incorporated in the indictment upon which this trial was had, but as to the capital offense of robbery, the state failed to meet the burden of proof necessary to a conviction for the major offense.

On the trial the defendant strenuously denied he had anything to do with getting the money, and insisted he was at home confined to his bed with serious illness for many days at the time of the alleged commission of the offense. He and his numerous witnesses testified to this fact.

The question here decided, as error, is presented in every conceivable manner, including a motion for new trial which in our opinion should have been granted.

Reversed and remanded.