(134 So. 679)

### THOMPSON v. STATE.

5 Div. 832.

Court of Appeals of Alabama.

May 12, 1931.

Wm. M. Russell, Richard H. Powell, Jr., and R. H. Powell, all of Tuskegee, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Thos. S. Lawson, Asst. Atty. Gen., for the State.

See, also, ante, p. 213, 132 So. 865.

**BRICKEN, P. J.**

The indictment in this case charged this appellant with the offense of robbery. He was tried and convicted as charged; his punishment being fixed by the jury at imprisonment in the penitentiary for ten years.

Upon arraignment, but before pleading to the indictment, defendant filed a written motion to quash the indictment upon the grounds that he (defendant) was subpœnaed by the grand jury to appear before them and give evidence in the case. The specific grounds of the motion are as follows:

"(1) Defendant says that before this indictment was returned he was carried before this same Grand Jury and compelled to testify against himself, without his consent, and that he was thus deprived of his Constitutional rights in connection with the matters set out in said indictment.

"(2) Defendant says that on a day prior to the time that this indictment was found by the Grand Jury and returned to the Court, in fact several days prior to the return of said indictment, and before the Grand Jury had proceeded to investigate the case as charged in the indictment, defendant was compelled to testify against himself before the Grand Jury in relation to and in connection with the matters charged in said indictment, and defendant says that he was not advised by the Solicitor in charge of said Grand Jury of his constitutional rights, and that he was not cautioned before testifying that the evidence would be used against him, and defendant says that at the time he was so compelled to testify against himself the Solicitor in charge of said Grand Jury and the same Grand Jury well knew that the defendant was charged with, and suspected of the crime named in the indictment. And defendant says that he was so compelled to testify against himself, the same Grand Jury returned this indictment against him.

"(3) Defendant says that on to-wit, the 13th day of October, 1930, while he was imprisoned in the County jail of Macon County, Alabama, on a charge of robbery, or grand larceny against the person and property of one Takeo Oyama, being the person referred to in the indictment in this cause, he was carried by the Sheriff of Macon County before the Grand Jury then in session, which said Grand Jury at said time was investigating the charge against him as set out in said indictment. And defendant says that he was compelled to testify before said Grand Jury in relation to the matters referred to and named in the indictment with which he was then charged or suspected, and for which he had been imprisoned and was then being held in jail. Defendant says that he asked for his Attorney who had been employed to represent him, and was not permitted to consult with his attorney, but was carried before the Grand Jury without benefit of counsel, and without being advised of his constitutional right to claim exemption under such circumstances from being forced to testify against himself. And defendant says that he was so compelled to testify against himself, and that after such testimony had been given, and on a later day, the same Grand Jury returned this indictment against him, charging him with an offense with which he was charged and suspected of at the time he was carried before the Grand Jury, and about which he was examined over his objection and without benefit of counsel.

"(4) Defendant says that the Grand Jury that returned a true Bill in this case was impaneled and organized as a Grand Jury for Macon County, Alabama, at October Term of Court on October 13th, 1930. That they proceeded to investigate charges and the complaints brought before them, and began the investigation of a charge of robbery or Grand Larceny as set out in the present indictment in this cause against the person and property against one Takeo Oyama; That defendant at that time was imprisoned in the County jail on a complaint charging him with said offense as herein referred to and as then investigated by said Grand Jury. And defendant says that while so imprisoned on said charge, and while said Grand Jury was investigating said offense, defendant was carried before said Grand Jury and compelled to testify regarding the matters referred to in this indictment and regarding the charge on which defendant had been arrested and put in jail. * * *

"And said defendant says that said investigation of the charge contained in the present indictment was made, and the indictment in this case was returned, several days after the

fendant had been carried before said Grand Jury and compelled to testify against himself about and concerning the matters complained of in said indictment, the defendant at said time being under charge and in prison on account of said offense."

■ Upon the hearing of the foregoing motion, there was no dispute about the fact that, while the defendant was confined as a prisoner in the county jail, he was subpœnaed to appear before the grand jury to give evidence in the case wherein he was charged with the offense of robbery, that the sheriff carried the defendant before the grand jury, and that he was there sworn as a witness and gave evidence touching the presentment wherein he was charged as aforesaid, and that afterwards the grand jury returned into open court the indictment in question upon which he was arraigned. There was, however, some conflict in the evidence as to what transpired while the defendant was before the grand jury.

In this connection appellant insists, where defendant is required to attend the grand jury and give evidence touching the crime charged against him, an indictment found against him by such grand jury will be quashed because of the invasion of defendant's constitutional rights protecting him from being compelled to give evidence against himself.

The Constitution expressly provides in all criminal prosecutions the accused shall not be compelled to give evidence against himself. Article 1, § 6, Const. 1901. This strict inhibition of the fundamental law should never be disregarded; its humane provision is manifest, and every person charged with the enforcement of law, in any capacity, should, with meticulous care, refrain from any official act tending to render nugatory and meaningless this mandatory provision.

This particular provision of the Constitution is self-operative; but, notwithstanding this, there are numerous statutes in this state which expressly prohibit the finding of an indictment where the accused has been required to appear before the grand jury and give evidence touching the offense with which he is charged. Sections 4244, 4702, 4638, 4635, of the Code 1923. Numerous other statutes of like import could be cited. Burt v. State, 20 Ala. App. 296, 101 So. 768; Ex parte Burt, 212 Ala. 96, 101 So. 770; Culbreath v. State, 22 Ala. App. 143, 113 So. 465. In the Culbreath Case, supra, this court said: "The motion to quash was the proper remedy. * * * The authorities of other states are unanimous in holding that, where a defendant has been required to attend before a grand jury and has made a statement in answer to their interrogatories touching the crime charged against him, even after being cautioned by the prosecuting attorney as to answering, the indictment found against said defendant by such grand jury will be quashed, because of an invasion of defendant's constitutional rights which protects him from being compelled to give evidence against himself."

In Sandwich v. State, 137 Ala. 85, 87, 34 So. 620, the Supreme Court said: "It is wholly immaterial and unimportant that there was other evidence adduced before the grand jury, which was sufficient, without regard to that given by the defendant, to authorize the finding of the indictment. The fact remained that the defendant was indicted after he had been required as a witness to answer generally as to any violation of the laws against gaming within his knowledge, and had so answered, thereby entitling himself to protection from prosecution as to any such offense so testified to by him."

Without prolonging this discussion upon the point of decision involved, we are of the opinion, in line with authorities cited, that the motion to quash the indictment should have been sustained.

■ Appellant next insists the court erred in not quashing the venire because of a variance between the copy of the indictment served upon him, by order of the court, and the indictment returned by the grand jury upon which he was put to trial. As the law requires, this being a capital case, the court after drawing the special jury, ordered the sheriff to serve on the defendant forthwith a copy of the indictment in this case, together with a list of all names of the regular jurors drawn and summoned and also the names of the twenty special jurors drawn for this case. Appellant complains that the indictment served on him and upon which he was put on trial contained only one count, while the indictment as returned by the grand jury contained two counts; hence the variance. We do not accord to appellant's insistence in this connection. The record discloses that the original indictment preferred by the grand jury contained two counts, as did the copy of indictment served upon defendant and no variance existed as between the indictment so returned with the copy of indictment served. In Scott v. State, 37 Ala. 117, the Supreme Court held: "If a copy of the indictment, as originally found by the grand jury, is served upon the prisoner * * * the validity of the service is not affected by the fact that a nolle prosequi had been entered as to one of the counts." In this cause the judgment entry shows that the second count of the indictment was duly nol prossed by the court upon motion of the state, before arraignment of the accused. The authority cited is a complete answer to appellant's contention, and is conclusive of the point of decision involved.

The next contention is that the state failed to prove the venue; that is to say, that the circuit court of Macon county had no jurisdiction to try this case for the reason the state failed to prove that the crime was committed in said county. This insistence can avail the appellant nothing. (1) For the noncompliance with Circuit and Inferior Court Rule 35, wherein it is provided: "Whenever the general charge is requested, predicated upon failure of proof as to time, venue, or any other point not involving a substantial right of recovery or defense * * * the trial court will not be put in error for refusing said charge, unless it appears upon appeal, that the point upon which it was asked was brought to the attention of the trial court before the argument of the case was concluded." Hendrix v. State, 11 Ala. App. 207, 65 So. 682; Ray v. State, 16 Ala. App. 496, 79 So. 620. Moreover, there was ample evidence in this case to afford an inference that the act complained of, if committed, took place in Macon county, Ala., and upon this point the jury were authorized in so finding from the evidence adduced upon the trial.

The principal, and most important insistence of appellant, was raised and is here presented by the action of the court in refusing to defendant the following charge which was requested in writing, to wit: "Charge 9. I charge you gentlemen of the jury, that, if you believe the evidence in this case you cannot convict the defendant of robbery." In this connection insistence is made that the acts complained of, even if committed by appellant as contended by the state, do not, under the law, constitute the offense of robbery, and that, under the evidence of the alleged injured party as well as all the evidence adduced upon the trial, the conviction of appellant for robbery was erroneous and wrongful; hence the above-quoted charge.

In Douglass v. State, 21 Ala. App. 289, 107 So. 791, 793, this court said: "There is no statutory robbery in this state. The common law prevails in Alabama as to this offense; and robbery, at common law, is an offense against both person and property, and is briefly defined as the felonious taking of money, or goods of value, from the person of another, or in his presence, by violence to his person, or by putting him in fear." The punishment for robbery is of course fixed by statute. Code 1923, § 5460.

As to the evidence in this case, it appears without dispute that upon the occasion in question the alleged injured party lost $800, consisting of eight $100 bills. As to how this occurred, the evidence was in sharp conflict. The appellant and the alleged injured party were the only witnesses upon the trial who testified as to this fact. The appellant testified that the money was won from the alleged injured party in a card game wherein four men were engaged. He strenuously denied that any wrong had been perpetrated by any one in this connection.

The alleged injured party testified by means of an interpreter and stated that his name was Colonel Takeo Oyama. He stated: I recall the date when I was riding on the train between Opelika and Montgomery; that the defendant invited him to the drawing room, and that he accepted the invitation. He entered the drawing room and at the suggestion of the defendant removed his coat. He and defendant sat on the same seat. The defendant's companions then came in and took seats across the card table from him and defendant. His coat was on the other seat. A pack of cards was brought out and he was asked to play. They tried to teach him to play cards, but he said he did not understand, as he knew nothing of cards. The three men played cards among themselves. There were eight $100 bills in his coat pocket lying over on another seat in the drawing room, and forty or fifty dollars in his trousers pocket.

Then the witness stated: "The smaller one of the two men who came in the drawing room, after the defendant and I had already got there, took the $800.00—eight one hundred dollar bills—out of the inside pocket of my coat and ran out. I spoke in Japanese 'What are you doing?'" The man who had got the money ran out of the drawing room. The defendant took hold of me when I tried to catch the fellow with the money. The defendant was in my way and I could not get to the man with the money. He held me while the small man ran out of the door."

On the question under consideration, we may pretermit entirely the evidence of the accused as to how the occurrence took place. This we do and are confronted with the legal proposition, Do the foregoing facts as testified to by the alleged injured party, which is the only evidence on the point, constitute the offense of robbery under the law? This is the main inquiry arising on this appeal.

We have given this question the attentive careful consideration its importance demands, and have reached the conclusion that, conceding the evidence of the alleged injured party to be true, the offense of robbery is not established, but at most the lesser offense of grand larceny has been thereby proven, provided, of course, this evidence is believed beyond a reasonable doubt. There is a total lack of any evidence tending to show force of any kind was resorted to in order to obtain the possession of the money, or that the alleged victim had been put in fear, or any attempt to do so by any one, and under his own statement the money had been taken from the pocket of his coat which was lying on another seat in the drawing room, and the "little man" who took it had gone with the money at

the time the defendant attempted to retard his pursuit of the man who had his money and who had fled.

As stated, the three essential ingredients or elements of the offense of robbery are (1) felonious intent; (2) force; and (3) putting in fear, as a means of effectuating the intent, and by that means, a taking and carrying away of the property of another from his person, or in his presence. In the nature of things, all these elements must concur in point of time, else the act done is not rounded out to the full measure of the capital felony. Thomas v. State, 91 Ala. 34, 9 So. 81, 83.

If force is relied on in proof of the charge, it must be the force by which another is deprived of, and the offender gains, the possession. If putting in fear is relied on, it must be the fear under duress of which the possession is parted with. In other words, the taking must be the result of the force or fear; and force or fear which is a consequence, and not the means of taking will not suffice. "The fear or physical ill must come before the relinquishment of the property to the thief, and not after; else the offense is not robbery." 2 Bishop, Criminal Law § 1175.

The authorities are practically of one accord that the violence, or putting in fear, must precede or be concomitant with the act by which the offender acquires the possession of the property; that is to say, if there be a taking by trick or connivance, and carrying away with felonious intent, but no violence or putting in fear, as a means of the taking of another's property, there is a larceny, but no robbery. Carson's Case, 17 Ala. App. 345, 85 So. 827.

It is quite clear, on the facts of this case, above quoted, that there was no taking of the money in question, in the sense necessary in robbery, but only a taking away, that is, making off with the money; and it is equally clear from the testimony we have quoted that, if any violence was used, it was used, not to effect a "taking," not to get physical control of the money, for the "little man" already had possession of the money and had gone with it and such possession was obtained without resort to violence or by putting the victim in fear, and in its worst phase the act complained of as having been committed by this appellant, by interfering with the pursuit of the man who had gone with the money, was to enable him to escape and to carry with him the money which had, as stated, been taken from the coat pocket of the alleged injured party while the coat was lying on another seat, and this without resort to violence or putting in fear.

In the Thomas Case, supra, the court said: "We hold in consonance with the authorities cited, and with what we conceive to be eminently sound in principle, that violence or putting in fear, to constitute the essential factor in the crime of robbery, must precede, or be concomitant with, the taking of the property from the possession of the owner; and that no violence, no excitation of fear, resorted to merely for the purpose of keeping a possession already acquired, or of escaping after the possession has been acquired, will supply the element of force which is an ingredient of this offense."

The above indisputably correct statement of the law fits this case exactly, so far as relates to the state's evidence. Here the money had been taken from the coat pocket while the coat was lying on a seat, and the miscreant after so taking the money, which act was the alleged commencement of the trouble, ran away with it, and the only thing this appellant is shown to have done by the state witness was to interfere in the pursuit of the person who had taken the money and had run out of the door of the drawing room with it.

In line with the foregoing, able counsel for appellant makes the following insistence, and, from what has been said, this insistence is in point and has our approval, to wit: "The testimony of the Japanese conclusively shows that the force relied upon by the State to substantiate the charge of robbery was applied after the money was taken. Under no theory of the law can this be robbery. It is settled law in this State that the force or fear must precede or be concomitant with the taking; it cannot follow the taking, and no force or fear, however severe, which follows the taking, can make the offense committed robbery. It seems useless to argue this proposition further. The testimony is clear to the effect that the man who took the money was out of the drawing room before the Defendant, by force, kept the Japanese from going out after him. It is undisputed that the force followed the taking of the money. Admitting, for the sake of argument, that the State's theory of the case is the correct one. We, therefore, submit that under the facts of the instant case as presented by the State, the charge of robbery was not substantiated, and the verdict of the Jury, as a matter of law, is contrary to all the evidence in the case, and the cause should be reversed."

For the errors indicated, the judgment of conviction from which this appeal was taken is reversed, and the cause remanded.

**Reversed and remanded.**