A jury found appellant guilty of robbery and fixed his punishment at imprisonment for ten years. He was sentenced accordingly. He had pleaded not guilty and not guilty by reason of insanity.
On the issue raised by the plea of not guilty, the only evidence was that presented by the State, chiefly the testimony of the alleged victim of the robbery, Grady Jones. He testified that on September 20, 1976, defendant came to him, a salesman for Brewbaker Motors in Montgomery, and inquired about a 1974 Chevrolet Camaro; that he and defendant drove away and returned in it, during a part of which time defendant drove the automobile. Grady Jones priced the automobile at $4,495.00 and told defendant it would take about four or five hundred dollars as a down payment. Later the same day defendant returned and informed Jones that he wanted to make a down payment and would like for Jones to drive him to the First Alabama Bank where he could obtain the money to make the down payment. According to the witness, he was driving the automobile, and when they reached the bank's parking lot the following occurred:
 "A I backed in the parking place, before I stopped he said he needed the car.
"Q And what did he do?
 "A He said I got a big knife here in my pocket. I don't want to have to hurt you.
"Q Did he show you the knife, Mr. Jones?
 "A Well, he had his hand in his pocket. All I seen was a handle of it.
"Q And he said I got a big knife in my pocket?
"A Yes.
"Q And you could tell it was a knife?
"A Yes, sir.
"Q What did you do when he told you that?
 "A I got out of the car. He told me he needed the car. *Page 780 
"Q Did he tell you to get out of the car?
"A Yes, sir.
"Q And you did that?
"A Yes, sir.
"Q And what happened then?
 "A I got out and he take off and I went across the street and called the police.
"Q He slid over there to where you were?
 "A He got over in the — the shift is on the floor and he crawled over there in the driver's seat."
On cross-examination, the witness said in part as follows:
 "Q Now, at that time, did he make a motion to you? Toward you or anything?
 "A The only thing he said was Let me see if you got a gun on you and he felt in my right pocket.
"Q And you did not?
"A No."
The witness testified that the incident occurred about 1:00 P.M.
According to the testimony of police officers, they apprehended defendant while driving the automobile in the early part of the afternoon of September 20, 1976. He was taken into custody but made no statement of an incriminating or exculpatory nature.
Appellant urges that the evidence is insufficient to show the crime of robbery in that it fails to show that the automobile was taken from Jones "by violence to his person, or by putting him in fear" (requisite to robbery) as held in such cases asLouis v. State, 24 Ala. App. 120, 130 So. 904 (1930), andThompson v. State, 24 Ala. App. 300, 134 So. 679 (1931), upon which appellant relies.
We discuss briefly the facts in Louis and Thompson in order to show whatever similarity there is in them to the facts in this case and the facts that distinguish them from this case.
In Louis, the alleged victim was caused by defendant to go to the bank and withdraw money therefrom and turn it over to defendant. Her testimony was that she was "hypnotized" or that defendant "put her under a spell." Defendant used no force express or implied against her. The court held there was no robbery.
In the other interesting case relied upon by appellant,Thompson v. State, the alleged victim was "Colonel Takeo Oyama" who testified through an interpreter that while riding on a train between Opelika and Montgomery, he was invited by defendant to a drawing room. He accepted the kind invitation. Soon after entering the drawing room, two others, companions of defendant, entered and the three commenced playing cards and invited the Colonel to join them. This he declined, stating that he knew nothing about cards. While the three were playing cards among themselves, one of the three took eight one hundred dollar bills out of the pocket of the victim's coat, which was "lying over on another seat in the drawing room" and immediately "ran out of the drawing room." The Colonel attempted to catch the fellow with the money, but defendant "held me while the small man ran out of the door." The court upheld the insistence of appellant therein that "The testimony of the Japanese conclusively shows that the force relied upon by the State to substantiate the charge of robbery was applied after the money was taken. Under no theory of the law can this be robbery. . . ."
Each of the cited cases, Louis and Thompson, is a splendid example of a fine distinction between robbery and other evil or criminal conduct, but neither supports appellant's contention. The wrong committed in Louis, if the alleged victim's testimony was true, has rarely plagued the courts. There is no hypnotism, no conjuration, or like conduct, involved in the case now before us. If there were, we would have little legal light to guide us. In legislation and in jurisprudence, such behavior has been largely relegated to oblivion with such offenses recognized by Blackstone as witchcraft, enchantment and sorcery. 4 Bl. Comm. 60.
In Thompson, the decision turned on the question of the precise time that force was exerted on the victim of the larceny. In *Page 781 
the case under review, the victim did not surrender possession of the automobile until after defendant had threatened to injure him with a knife.
Robbery requires force on the part of defendant or conduct, by word or action, that places the victim in fear of injury, but the extent of the fear is sufficient if it causes the victim to part with his property unwillingly. Under the evidence, brief though it was, the only reasonable conclusion is that Jones was caused by defendant to part unwillingly with the automobile by reason of fear of injury by defendant.
The insistence by appellant that he was denied the constitutional right to compulsory process for the attendance of Dr. Thomas Smith, a psychiatrist at Bryce Hospital, is answered adversely to appellant by Judge Almon, now Justice Almon, in Pierce v. State, 52 Ala. App. 422, 293 So.2d 483
(1973). It was there held that the statutory procedure provided by Code of Alabama 1940, Recompiled 1958, Tit. 45, § 226, of which appellant complains, for obtaining the testimony of the superintendent or a physician of a State mental health facility or hospital by way of deposition, is a constitutional alternative to compulsory attendance at trial. It is also to be noted that defendant did not raise the constitutional question on the trial. Furthermore, the record shows that he was afforded time and opportunity prior to trial to take the deposition of Dr. Smith, that he did not issue a subpoena for Dr. Smith personally, and that he was permitted by the court ample opportunity to develop findings and opinions of Dr. Smith as revealed by the records of the hospital. The court was not in error in denying defendant's request for an attachment for Dr. Smith.
On the issue raised by the plea of not guilty by reason of insanity, defendant showed by documentary evidence that on February 11, 1977, he was found by the Forensic Evaluation Board, of which Dr. Smith was a member, not to have been free from mental defect, disease or derangement at the time of the alleged offenses in this case, so as to be able to distinguish right from wrong and that he on February 11, 1977, did not possess sufficient mental capacity to understand the nature of the proceedings against him and to cooperate and assist in the conduct of his defense; that on April 25, it was determined by the same Board that he was competent to stand trial. It was also shown that during the last approximately fifteen years before trial, defendant had spent most of his time in jails or in the penitentiary by reason of several felonies including robbery and grand larceny.
The trial court comprehensively instructed the jury on the subject of insanity as a defense. The determination against the defendant of that issue was clearly within the province of the jury. Boyle v. State, 229 Ala. 212, 154 So. 575 (1934); Hawkinsv. State, 267 Ala. 518, 103 So.2d 158 (1958); Carr v. State,43 Ala. App. 642, 198 So.2d 791 (1967); Luster v. State,45 Ala. App. 19, 221 So.2d 695. In each of such cases, it was stated that even the undisputed testimony of expert witnesses that defendant was insane did not preclude a valid finding by the jury to the contrary. In Boyle, it was said:
 "Cases of insanity may be so clear, the proof so strong and undisputed, that the jury should be instructed in like form.
 "But courts should be careful not to invade the province of the jury in cases of this character. Although the evidence may be offered only by the defense, and all tend to one conclusion, yet, in view of the presumption of sanity, if the evidence is inconclusive, and reasonable inferences may be drawn that the act was that of a sane man as defined by law, the affirmative charge should be refused. (229 Ala. 222, 154 So. 583)
. . . . .
 "The rule is fully settled with us that opinion evidence, even of experts, and in insanity cases, is to be weighed by the jury, and its probative force in overcoming the presumption of sanity, as a rule, is for them. Parrish v. State, 139 Ala. 16, 36 So. 1012; Anderson v. State, supra *Page 782 
[209 Ala. 36, 95 So. 171]." (229 Ala. 224, 154 So. 586)
It is to be noted that the evidence is lacking in any suggestion of insanity other than as it is related to crimes such as robbery and larceny. It should be further noted that all during the time defendant is claimed to have been insane in this case, he matched wits with a sophisticated used car salesman and won.
We find no error in the record prejudicial to defendant, and the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court.
The judgment below is hereby
AFFIRMED.
All the Judges concur.