The defendant was indicted and convicted for the capital offense involving the intentional killing and robbery of Scott Deroo. Sentence was life imprisonment without parole.
The defendant was indicted under Section 13A-5-31 (a)(2), Alabama Code 1975, defining the capital offense of "(r)obbery or attempts thereof when the victim is intentionally killed by the defendant." The jury found the defendant "guilty of robbery in which the victim, Scott Deroo, was intentionally killed." The defendant was not indicted and convicted under what is now Section 13A-5-40 (a)(2), defining the capital offense of "(m)urder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant." Section 13A-5-31 was repealed and replaced by Section 13A-5-40, effective July 1, 1981.
The indictment charged in pertinent part that the defendant
 "feloniously took, to-wit: one (1) backpack and contents thereof, . . . the personal property of Scott Deroo, from his person and against his will, by violence to his person or by putting him in such fear as unwillingly to part with the same, and during the course of said robbery, the said Matthew L. Beverly, . . . did unlawfully and with malice aforethought intentionally kill the said Scott Deroo by shooting him with a rifle."
The defendant contends that the evidence adduced at trial is insufficient to support the conviction. He argues with considerable skill and diligence that there was "absolutely no evidence offered showing the victim was robbed."
Viewing the evidence and all inferences arising therefrom in a light most favorable to the State, we find that the prosecution completely and totally failed to prove that the defendant robbed Deroo of a backpack as alleged in the indictment.
The pertinent facts when considered most favorably towards the State reveal that on the tenth of April 1979 Melissa Hefner, age fifteen, and Scott Deroo, age nineteen, began hitchhiking from Superior, Wisconsin, to Tampa, Florida, to visit Deroo's mother. The defendant and his two companions picked up the two hitchhikers in Birmingham, Alabama, between 8:00 and 9:00 that night. Ms. Hefner had with her a green duffle bag containing her clothing. Deroo carried his personal items in an orange backpack.
The two hitchhikers returned with the defendant and his friends to Huntsville, Alabama, upon the defendant's offer of lodging for the night and because Deroo was unfamiliar with the way to Tampa from Birmingham. On the trip from Birmingham to Huntsville everyone smoked marijuana and drank beer. It is undisputed that "(a)t some point along the way, the duffle bag and orange backpack were placed in the trunk of the car to keep Appellant's friend Bubba from having to hold the backpack in his lap." (Appellee's Brief, p. 5).
Norman ("Bubba") Cook, Jr. testified:
 "A. Sometime or other from the time we got to Birmingham and the time we got back (to Huntsville) we put it (the backpack) in the trunk somewhere, but I don't remember where it was at.
 "Q. Who did this, do you remember who placed the backpack in the trunk?
"A. No, I don't.
"Q. Do you recall whose idea it was? *Page 760 
 "A. No, but I imagine it could have been my idea because the backpack setting on my lap, but I'm not sure.
. . . .
 "Q. When you were in the backseat with Melissa and Scott and they had their belongings with them, wasn't that uncomfortable?
"A. Do what?
"Q. Was that uncomfortable?
"A. Yes.
 "Q. There might have been some grumbling about a lack of room back there?
"A. Yes, it's possible.
 "Q. Isn't it true that you were the one who suggested that they put the bags and duffle bags in the trunk so you could have more room back there?
"A. I don't remember exactly who said it.
"Q. But the pack was in your lap?
"A. Yes.
"Q. It was uncomfortable for you?
"A. Yes."
The defendant's other friend, Jerry Lee Francis, testified that on their return from Birmingham to Huntsville the backpack and the duffle bag were placed in the trunk when they "stopped off the interstate to use the bathroom." He did not remember who placed this "stuff" in the trunk.
Arriving in Huntsville at approximately 1:00 a.m., the defendant drove to Bubba's residence and asked Bubba if he had any .22 caliber shells. Bubba went in his residence and searched but was unable to find any. When Bubba returned and said he could not find them, Jerry said, "Well, I have some, I'll give you a couple, I don't have a box but I'll give you a couple."
Jerry and the defendant then got into the car where the hitchhikers had been waiting and drove to Jerry's house. There, Jerry went into the house and returned and gave "six or seven bullets" to the defendant.
The defendant had made no mention of shooting Deroo to either Bubba or Jerry. Both Jerry and Bubba testified that the defendant had talked about shooting fish and "hunting and stuff and fishing" when they had been at Braham Springs earlier that day before they went to Birmingham and picked up the hitchhikers.
After receiving the bullets, the defendant returned to the car alone and drove off with the two hitchhikers still in the back seat of his automobile. Quoting from the Attorney General's brief:
 "After leaving his second friend's house, Appellant drove in the dark down a little bush-lined dirt road past a white house into a field. Appellant stopped the car, told Melissa and Scott his radiator was overheating, and got out and opened the trunk of the car. Melissa heard sounds of Appellant moving things around in the car's trunk; and then Appellant called out to Scott, `Could you come here and help me a minute.'
 "Scott got out and walked to the back of the car and Melissa heard three shots. Appellant then got back in the car, tied Melissa's hands behind her, and tied her feet. Appellant exited the car again, and Melissa heard another shot followed by a gurgling sound and the sounds of Appellant dragging something along the ground and rustling the bushes.
 "Appellant then re-entered the car and raped Melissa after which he drove to a Tenneco Station with Melissa tied up and lying in the back seat."
When the defendant attempted to leave the station, his car would not start. The defendant paid an attendant to drive them to a friend's house where the defendant forced Melissa to spend the night.
The next morning the defendant drove his friend's Toyota to the Tenneco Station where he retrieved Melissa's duffle bag and Deroo's backpack from the trunk of his car and placed them in the Toyota.
Again, from the brief of the Attorney General:
 "They then drove on a little dirt road and parked, and Appellant began going through Scott Deroo's backpack, removing all the contents and looking at them closely, including Scott Deroo's wallet. Appellant then did the same with Melissa's *Page 761 
duffle bag. Appellant then replaced the items after wiping off any surfaces that might retain a fingerprint.
 "Then they left, and arriving at an access ramp of an interstate highway, Appellant let Melissa out and gave her five dollars to call her mother."
When the defendant drove away, Deroo's backpack was in the back of the Toyota. Ms. Hefner was soon picked up by a passing State Trooper. The defendant was arrested at the friend's house where he had forced her to spend the night.
Two days later Deroo's body was found. On Deroo's wrist was a watch and $31.39 was found in his right front pocket. Nothing else was found in his clothing. His backpack was later found near the spot where the defendant had released Ms. Hefner. Even later, Deroo's social security card was found in the median of Highway 72.
The State proved that the murder weapon, a .22 caliber rifle, was purchased by the defendant in July of 1976.
The State also showed that a headband Deroo had in his back pocket when he was shot was found lying near the body at the shooting scene.
Under the indictment, the State had to prove robbery when the victim is intentionally killed. Section 13A-5-31 (a)(2). As the trial judge instructed the jury, "By charging the Defendant under this category of a capital felony as it is described, the law casts upon the state the burden to prove beyond a reasonable doubt that the Defendant is guilty of the offense of robbery and of the offense of intentionally killing the victim of that robbery."
The three essential elements of common law robbery are: (1) the felonious intent, (2) force or putting in fear as a means of effectuating the intent, and (3) by that means, taking and carrying away the personal property of another from his person or in his presence, all of these elements concurring in pointof time. The violence or putting in fear must precede or be concomitant with the act by which possession of the property is acquired. Tunstill v. State, 33 Ala. App. 460, 463,34 So.2d 857, cert. denied, 250 Ala. 421, 34 So.2d 859 (1948). Here, the State failed to prove that Deroo was deprived of his backpack by force or fear as charged in the indictment.
The issue presented was thoroughly explored by our Supreme Court in Thomas v. State, 91 Ala. 34, 9 So. 81 (1890). Thomas
held that a robbery conviction could not be had on evidence showing that the accused obtained the possession of the property by fraud or artifice, and retained it by force or threats of violence. The specific holding of that case was:
 "(W)e hold, . . . that violence or putting in fear, to constitute the essential factor in the crime of robbery, must precede, or be concomitant with, the taking of the property from the possession of the owner; and that no violence, no excitation of fear, resorted to merely for the purpose of keeping a possession already acquired, or of escaping after the possession has been acquired, will supply the element of force which is an essential ingredient of this offense."
Thomas, 91 Ala. at 39, 9 So. 81.
"If force is relied on in proof of the charge, it must be the force by which another is deprived of, and the offender gains, the possession. If putting in fear is relied on, it must be the fear under duress of which the possession is parted with."Thompson v. State, 24 Ala. App. 300, 305, 134 So. 679 (1931). "It is settled law in this State that the force or fear must precede or be concomitant with the taking; it cannot follow the taking, and no force or fear, however severe, which follows the taking, can make the offense committed robbery. It seems useless to argue this proposition further." Thompson,24 Ala. App. at 305, 134 So. 679. "If there be a taking by trick or connivance, and carrying away with felonious intent, but no violence or putting in fear, as a means of the caption of another's property, there is larceny, but no robbery." Ex parteCarson, 17 Ala. App. 345, 346, 85 So. 827 (1920). See also Rootv. State, 247 Ala. 514, 25 So.2d 182 (1946); Annot. *Page 762 
93 A.L.R.3d 643 (1979). Compare Cobern v. State, 273 Ala. 547,142 So.2d 869 (1962); Oliver v. State, 399 So.2d 941 (Ala.Cr.App. 1981).
Our new Criminal Code significantly broadened the scope of common law robbery by adding new methods of committing that crime. Section 13A-8-41, 42, 43. Under these sections, the conduct in Thomas, supra, and the defendant's conduct here might well be deemed to constitute robbery. Commentary following Section 13A-8-44. However, as we have emphasized, the defendant was charged and the jury was instructed on common law robbery since there was no statutory robbery in this state before January 1, 1980, and the Criminal Code. Douglass v.State, 21 Ala. App. 289, 291, 107 So. 791 (1926); Alabama Code Section 13A-1-11 (1975).
"(A) conviction based upon a record wholly devoid of any evidence of a crucial element of the offense charged is constitutionally infirm." Jackson v. Virginia, 443 U.S. 307,314, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1979); Thompson v.Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship,397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970);Frederick v. State, 20 Ala. App. 336, 102 So. 146 (1924).
Upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt of the crime charged in the indictment beyond a reasonable doubt. Even the circumstantial evidence of this case does not pass the test ofDolvin v. State, 391 So.2d 133 (Ala. 1979), and Cumbo v. State,368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877
(Ala. 1979). The deficiency in this particular case is not a mere insufficiency of the evidence but rather the total lack of proof of all the essential elements of common law robbery as charged in the indictment. For this reason, we have no choice but to reverse the judgment of the trial court and remand this cause.
REVERSED AND REMANDED.
All Judges concur.