TYSON, Judge.
Robert Jackson Carlisle was indicted for robbery in the first degree in violation of § 13A-8-41, Code of Alabama 1975. The jury found the appellant “guilty as charged in the indictment” and he was sentenced to life imprisonment without parole as a habitual felony offender.
On the evening of October 9, 1984, Steven Florence and Bill Castle went to Soso’s Tavern. While there Florence played pool with Gary Ledlow for approximately one and a half hours. On each game, Florence would bet $10.00 with Ledlow and $5.00 each with two bystanders. During this time Florence got into an argument with one of the bystanders who was bothering him. When Florence ran out of money, he quit playing. He was unable to pay the man with whom he had argued.
At this point, Florence asked the man to step outside. Florence went outside and put his pool stick in his car. The man never came out.
Shortly, Castle and some other patrons came outside. A man walked up to Florence and introduced himself as Bob Car-lisle. That man was this appellant. The appellant said, “They’s fifteen of us and *541 you don’t want to mess with any of us.” (R. 12). Florence replied, “Well, you’re right, I don’t even know you.” “I have no trouble with you whatsoever.” (R. 12).
While the appellant, Carlisle, was still standing nearby, Castle asked Florence if he wanted to make his money back. When Florence replied that he did, Castle told him to meet him at the AmVets Club.
Florence then drove to the AmVets Club on 3rd Avenue in his 1977 gold Malibu. He arrived there at 3:20 a.m. The AmVets Club was closed but Florence waited there so he could tell Castle that he was going home. A short while later, a gold Lincoln drove up behind Florence’s car. Florence opened the door to look back and see who was in the car. At this point, the appellant went to the passenger side of Florence’s car. He had a black .38 snubnose pistol.
Florence then began backing his car up. The appellant came around to the driver’s side of the car and hit Florence with the gun. Three other people then got out of the Lincoln. One was a female with black hair, one was a male with blonde hair and the other one was the man with whom Florence had the argument at Soso’s Tavern. The appellant then said “Don’t never pull a gun on me again.” (R. 47).
Florence then began to run. As he was running, he heard a shot. Florence ran to a building on the next block and hid. He then saw the Lincoln and his car drive by him.
Florence ran back to 3rd Avenue and flagged down a policeman. He told the officer he’d been robbed and shot. The officer told him he’d been in pursuit of a gold Lincoln before Florence stopped him. The officer then left. He came back shortly but had been unable to catch the Lincoln. The officer took a report from Florence.
Florence then walked home. When he got home around 5:00 a.m. he had a conversation with his sister. After this conversation Florence located his car off the Arka-delphia Exit on Interstate 20 and 59 North. A window was down and the trunk was partially open. Florence discovered numerous items were gone from his trunk including two rifles, some tools and fishing gear.
Florence called the police and then drove the car home to Bessemer. A police officer came to his house and dusted his car for fingerprints.
Louis Evens, an evidence technician with the Birmingham Police Department, dusted Florence’s car for fingerprints. He obtained two lifts from the trunk but they were insufficient for purposes of comparison.
Clarence Mitchell, an investigator with the robbery division of the Birmingham Police Department, obtained a statement from the appellant on October 28, 1984. Prior to the statement, the appellant was given his Miranda warnings. The appellant stated he understood his rights and wished to talk.
The appellant told Mitchell that, while he was at Soso’s Tavern on the night in question, someone told him he needed to stop an altercation outside. When the appellant went outside Florence pulled a gun on him. The appellant cursed Florence and threatened to whip him. Florence then left.
A short while later the appellant went with a male and a female to the AmVets Club on 3rd Avenue. The appellant denied seeing Florence there.
Charles Chaney testified that, on the evening of October 9, 1984, he was at Soso’s Tavern with the appellant, Sandy Kay and Robert Blackburn. He and Kay were betting on Ledlow while he was playing pool with Florence.
After Florence finished playing he couldn’t pay Chaney and asked him to step outside. Castle told Chaney that he’d take care of the money sometime. Then Florence left.
A few minutes later Blackburn came in the bar and said that someone had a gun on the appellant. Shortly, the appellant came back in. The appellant, Chaney, Kay and Blackburn remained at Soso’s Tavern for a while and then went to the AmVets Club in Irondale. Chaney drove the other three in his gold Lincoln. Chaney opened the Am- *542 Vets Club because he worked there. The four drank and Chaney eventually fell asleep there. He doesn’t know when the appellant left the Club.
I
The appellant contends his motion for judgment of acquittal should have been granted because the State failed to prove he had the “intent to commit a theft of the victim’s property concurrent with or subsequent to the application of any force or violence.” (Appellant’s brief, p. 6).
“§ 13A-8-41. Robbery in the first degree.
“(a) A person commits the crime of robbery in the first degree if he violates section 13A-8-43 and he:
“(1) Is armed with a deadly weapon or dangerous instrument; or
“(2) Causes serious physical injury to another.
“(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed.
“(c) Robbery in the first degree is a Class A felony. (Acts 1977, No. 607, p. 812, § 3305.)”
Ala.Code § 13A-8-41 (1975).
“§ 13A-8-43. Robbery in the third degree.
“(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
“(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
“(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.
“(b) Robbery in the third degree is a Class C felony. (Acts 1977, No. 607, p. 812 § 3307.)”
Ala.Code § 13A-8-43 (1975).
Prior to January 1, 1980 robbery was a common law offense. At common law, robbery was “... the felonious taking of goods or money from the person of another, or in his presence, against his will by violence or by putting him in fear, and such violence must precede or accompany the stealing. Tunstil v. State, 33 Ala.App. 460, 34 So.2d 857; Hardis v. State, 28 Ala.App. 524, 189 So. 216.” Hatchet v. State, 335 So.2d 415, 418 (Ala.Crim.App.1976). (Emphasis added). Our present Criminal Code “... significantly broadened the scope of common law robbery by adding new methods of committing that crime.” Beverly v. State, 439 So.2d 758, 762 (Ala.Crim.App.), cert. denied, 439 So.2d 758 (Ala.1983).
Now, the violence used or threatened does not have to precede or accompany the theft but it “must be for the purpose of accomplishing [the] theft.” Commentary, § 13A-8-40 through 44, Code of Alabama 1975.
Two factual situations are presented before us. First, the violence used by the appellant, Carlisle, and his companions against Florence was for the purpose of accomplishing the theft. Second, the violence used was for the purpose of harming or scaring Florence and once Florence, the victim, left his vehicle, the appellant and his companions decided to steal it.
Clearly, the evidence raised a factual issue which presents a jury question. Kelly v. State, 423 So.2d 343 (Ala.Crim.App.1982). There was evidence presented by the State that Florence unwillingly parted with his property out of fear due to the actions of the appellant. Watson v. State, 389 So.2d 961 (Ala.Crim.App.1980); Pollard v. State, 358 So.2d 778 (Ala.Crim.App.1978). A demand for the property is not necessary to sustain a conviction for robbery. Clements v. State, 370 So.2d 708 (Ala.Crim.App.1978), affirmed in part, re *543 versed in part (on other grounds), 370 So.2d 723 (Ala.1979).
A factual situation similar to the one at bar is presented in Oliver v. State, 55 Ala.App. 192, 314 So.2d 111 (1975). In that case, “... the victim was alone in a deserted area of the shopping center, after closing time, carrying a bag containing a large amount of money and, being chased by a car and two men on foot armed with a pistol and a shotgun, shouting at him to stop or they would shoot and kill him.” Oliver, supra at 113. The victim threw down the bags and one of the men retrieved the bags. This court held that the victim was caused to part with his property out of fear even though there were no words spoken to the victim about the specific property.
The question or issue of the appellant’s intent was a question for the jury which they properly resolved against him. Garrison v. State, 372 So.2d 55 (Ala.Crim.App.1979); Odom v. State, 348 So.2d 277 (Ala.Crim.App.), cert. denied, 348 So.2d 282 (Ala.1977).
The appellant’s motion for judgment of acquittal was properly denied. There was sufficient evidence presented by the State from which the jury could conclude by fair inference that the appellant was guilty beyond a reasonable doubt of robbery in the first degree.
Por the reasons shown, the judgment of the trial court is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.