In 1978, Charles Bracewell was convicted for the capital murder-robbery of Rex Carnley and sentenced to death. That conviction was eventually reversed on appeal after remandment from the United States Supreme Court. Bracewell v. State,475 So.2d 616 (Ala.Cr.App. 1984). In 1986, Bracewell was again convicted but was sentenced to life imprisonment without parole. He now appeals from that conviction and presents five issues.
 I
Bracewell contends that the trial court erred in not permitting his brother, James Bracewell, to testify that the reason why he did not testify in Bracewell's first trial was because "he had been pressured by the District Attorney's Office not to do so." Appellant's brief, p. 2.
On appeal, Bracewell asserts that he called James to testify in his defense in order to prove that he had not left the state after the crime "as had been contended by the State." Appellant's brief, p. 1. However, the issue of flight was not disputed at trial.
Carnley was murdered sometime during the early morning hours of August 15, 1977. State witness Jimmy "Eddie" Robinson testified that, on the evening of the 15th, Bracewell told him that "that Carnley boy got killed over in Opp and I will be the first one they come after." However, when asked, Bracewell denied "doing it."
The State introduced into evidence a confession Bracewell gave the police after his arrest. In that statement, Bracewell admitted that he told Robinson that he and his wife "were going to have to go to Florida because Rex Carnley had been robbed and killed and the law would be looking for us." Bracewell stated that "we *Page 356 
left the next morning [the 16th] and went to Florida and stayed 4 or 5 days."
The defense called Robinson as its first witness and established that Bracewell was not at Robinson's house on August the 14th, as Bracewell had stated in his confession. On cross examination by the District Attorney, Robinson testified that on August 15th, Bracewell "didn't say nothing about going to Florida then" but said "[h]e was going to have to get out of Opp" because "the law would be looking for him."
Nadine Bracewell, Bracewell's sister, testified that she saw Bracewell on August the 15th and the 18th but did not see him for the next two weeks. When asked if Bracewell was "in Florida there in June, July and August; along in there," she replied, "He was in Florida most of the time."
On direct examination, James Bracewell testified that he saw Bracewell in Opp on August 16th, 21st, and 24th. He stated that he "heard" that Bracewell and his wife went to Florida but did not know that "for a fact." After that testimony, the following occurred:
"CROSS-EXAMINATION
"BY MR. LANIER [district attorney]:
"Q. Mr. Bracewell, you are James' [sic] brother?
"A. Yes, sir.
 "Q. You didn't testify in the first trial, did you?
"A. No, sir.
"MR. LANIER: No other questions.
"REDIRECT EXAMINATION
"BY MR. SIKES [defense counsel]:
 "Q. The District Attorney asked you why you testified in the first trial?
 "MR. LANIER: No, sir, I asked him if he testified. I didn't ask him why.
 "MR. SIKES: I know you didn't ask him why. I'm going to ask him why.
 "MR. LANIER: We object to asking him why he didn't have an opportunity to come up here and testify.
 "Q. Did the District Attorney ask you not to testify?
"MR. LANIER: We object.
"THE COURT: I sustain the objection.
 "Q. Did you have a conversation with the District Attorney prior to that trial?
"MR. LANIER: Again, Your Honor, we object.
"A. Not directly.
 "THE COURT: He said not that he recollected; he answered it.
 "MR. BRACEWELL: I said not directly. I received a message from him.
"Q. You received a message from —
 "MR. LANIER: We object to all of this conversation or message.
"THE COURT: I sustain.
 "MR. SIKES: Judge, I think we have the right to go into whether or not —
 "THE COURT: I sustained the objection. You may proceed.
"MR. SIKES: I have nothing further."
Bracewell contends that he was not allowed to rebut the District Attorney's discrediting inference that, because James did not testify at the first trial, his testimony was a recent fabrication.
James Bracewell's failure to testify at the first trial was "a proper circumstance to be considered by the jury in weighing his evidence" and a proper subject of cross examination.Shirley v. State, 144 Ala. 35, 40 So. 269, 271 (1906) ("The failure of witness to give evidence of this fact on the preliminary trial was a proper circumstance to be considered by the jury in weighing his evidence. Besides, the question fell within the latitude allowed on the cross-examination of a witness."). See also 98 C.J.S. Witnesses § 485(b)(6) (1957).
Generally, a witness cannot testify as to his undisclosed mental state or intent. Pollard v. Rogers, 234 Ala. 92, 99,173 So. 881 (1937). There is an established exception to this rule. "The exception allows a witness, who on cross-examination admits making, or is shown to have made, a prior statement inconsistent with that testified on direct examination, to give his own undisclosed intent, motive, or other mental state, as an explanation for having made *Page 357 
the prior inconsistent statement." Pollard, 234 Ala. at 99,173 So. 881; Hubbard v. State, 471 So.2d 497, 499 (Ala.Cr.App. 1984) (where investigator was asked on cross examination why he did not investigate defendant's allegation of blackmail, he was properly allowed to testify on redirect that he did not believe these allegations); Hall v. State, 19 Ala. App. 229, 230,96 So. 644 (1923) (witness properly permitted to testify on redirect examination that defendant had threatened to kill her if she did not make a statement).
 "In order to refute unfavorable inferences and to avoid the effect of the cross-examination, a witness may be asked as to his reasons for his statements on cross-examination or at other times, or for acts, omissions to act, or conduct on his part which have been brought out. This rule, however, does not entirely supersede the rule against the admission of hearsay evidence." 98 C.J.S. Witnesses § 421 (1957).
When a party has a witness on redirect examination, "the object is to answer any matters brought out on the cross-examination of the witness by his adversary." C. Gamble, McElroy's AlabamaEvidence § 439.01(1) (3rd ed. 1977). While trial courts are vested with considerable discretion as to the examination of witnesses, "this discretion does not go to the extent of authorizing a denial to a party the right to explain or qualify discrediting facts brought out by the opposite side." Payne v.Roy, 206 Ala. 432, 435, 90 So. 605 (1921).
Although defense counsel was entitled to show why James Bracewell did not testify at his brother's first trial, there is no error in the record. In fact, James was never asked why he did not testify at the first trial. "As a general rule, in the absence of a showing of propriety, a leading question to one's own witness on redirect examination is objectionable and is properly excluded, and it is erroneously allowed where its effect is harmful. However, as in other matters in reexamination, it is within the discretion of the court to permit or refuse the asking of such a question." 98 C.J.S.Witnesses § 428 (1957), citing Whitt v. Forbes, 258 Ala. 580,587, 64 So.2d 77 (1953). See also Gilliland v. State,466 So.2d 151, 158 (Ala.Cr.App. 1984).
James Bracewell stated that he did not have any "direct conversation" with the District Attorney. Defense counsel made no offer of proof to show the substance of the witness's expected testimony. In order to review a ruling sustaining an objection to a question which does not on its face show what is the expected answer, attention must be called to the proposed answer and it must be shown that such answer was relevant and admissible. Davis v. Davis, 474 So.2d 654, 656 (Ala. 1985);McElroy at § 425.01(4).
As stated earlier, the issue of flight was not disputed at trial. In fact, it is undisputed that some time after the crime, Bracewell did go to Florida. Neither the district attorney nor defense counsel made any direct reference to flight in their opening statements or closing arguments. The only comment which had any potential for being construed as a reference to flight was the District Attorney's statement: "They [Bracewell's brother and sister] really didn't get up here and tell something that in their minds they didn't think was true. They just told about seeing Charles either the day before or two days afterwards. But, Nadine Bracewell said she saw him on Thursday and then she didn't see him for two or three weeks. He was gone." There was never any argument made that flight indicates a consciousness of guilt. The trial court did not charge the jury on the legal principles of flight.
Considering these facts, and especially in view of the fact that James Bracewell testified that he had "heard" that Bracewell went to Florida, we find that any potential error in the refusal to permit James to answer the particular questions asked was harmless.
 II
Bracewell argues that the trial court erred in charging the jury on circumstantial evidence when "there was not a scintilla of circumstantial evidence introduced at trial." Appellant's brief, p. 3. *Page 358 
While the evidence tying Bracewell to the crime was his own confession and admissions, the corpus delicti was established, at least in part, by circumstantial evidence. See Issue V.
Additionally, while Bracewell objected at trial to the court's charging on circumstantial evidence, two of the written charges he requested expressly referred to principles of circumstantial evidence and the burden of proof. Those charges were refused.
"[I]t is not reversible error for the court to refuse an abstract charge, nor will the giving of an abstract charge which asserts a correct legal proposition operate a reversal unless it appears that on account of the circumstances of the case and the character of the charge given it was calculated to prejudice." McPhearson v. State, 271 Ala. 533, 540,125 So.2d 709 (1960). Considering the evidence in this case, we find that the charge did not prejudice Bracewell. We reject as mere speculation and conjecture Bracewell's allegations that the charge "created in the minds of the jury an impression that more had been proved than actually had been proved" and that "[t]his obviously made a conviction more likely than it would otherwise have been." Appellant's brief, p. 3.
 III
Upon proper request, a jury venire in a capital case should be questioned as to whether or not any venireperson has a fixed opinion in favor of capital punishment. The proper standard for determining when a prospective juror may be excluded for cause because of his views on capital punishment is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " Wainwright v. Witt, 469 U.S. 412,424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985), quoting Adamsv. Texas, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581
(1980). "All veniremen are potentially biased. The process of voir dire is designed to cull from the venire persons who demonstrate that they cannot be fair to either side of the case." Smith v. Balkcom, 660 F.2d 573, 578 (5th Cir. 1981), cert. denied, 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148
(1982) (emphasis in original). "A venireman who believes that the death penalty should automatically and in every case flow from conviction of first degree murder must be excused. SeeStroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103
(1919); Crawford v. Bounds, 395 F.2d 297 (4th Cir. 1968), cert. denied, 397 U.S. 936, 90 S.Ct. 941, 25 L.Ed.2d 117
(1970)." Alvord v. Wainwright, 564 F. Supp. 459, 487 (M.D.Fla. 1983), affirmed in part, reversed in part on other grounds,725 F.2d 1282 (11th Cir.), cert. denied, Alvord v. Wainwright,469 U.S. 956, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984). "It is error to deny the defense the opportunity to seek to determine whether a prospective juror would under no circumstances recommend mercy in the event the defendant is found guilty of the capital crime charged." 47 Am.Jur.2d Jury § 290 (1969). See also Annot., 48 A.L.R.2d 560, §§ 7 and 11 (1956).
This case is just the reverse of that presented inWitt, supra, and Witherspoon v. Illinois, 391 U.S. 510,88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), which involved the exclusion of venirepersons opposed to capital punishment. However, similar principles apply, and we find that the failure to voir dire the venire to determine if any person favored capital punishment was not error where the jury unanimously recommended a sentence of life without parole. Neelley v. State,494 So.2d 669 (Ala.Cr.App. 1985), affirmed, Ex parte Neelley,494 So.2d 697 (Ala. 1986); Eady v. State, 284 Ala. 327, 328,224 So.2d 876 (1969); Agee v. State, 465 So.2d 1196, 1201 (Ala.Cr.App. 1984).
 IV
The trial court properly refused the defendant's requested instruction on manslaughter, finding "absolutely no evidence to support that."
The defendant's argument is based on that part of his confession wherein he stated that Carnley was shot by Deborah Bracewell after he said, "I don't see why you want to rob me when I have offered *Page 359 
you $100.00 to go to bed with me." At this time the defendant and his wife had been married for approximately two weeks. The defendant apparently contends that this constituted sufficient provocation to reduce the killing from murder to manslaughter. "The well established rule in Alabama is that mere words, no matter how insulting or abusive, cannot reduce a killing to manslaughter." Biggs v. State, 441 So.2d 989, 992 (Ala.Cr.App. 1983).
 V
Contrary to the defendant's argument, there was sufficient evidence to prove the corpus delicti of the robbery portion of the charged offense involving robbery and intentional killing even when his confession is excluded.
The defendant was charged with the capital offense of robbery when the victim is intentionally killed in violation of Alabama Code 1975, § 13-11-2(a)(2). The State was required to prove both a robbery and an intentional killing. Beverly v. State,439 So.2d 758, 761 (Ala.Cr.App. 1983).
The corpus delicti or "[T]hree essential elements of common law robbery are: (1) the felonious intent, (2) force or putting in fear as a means of effectuating the intent, and (3) by that means, taking and carrying away the personal property of another from his person or in his presence, all of these elements concurring in point of time." Beverly, 439 So.2d at 761 (emphasis omitted). In Watters v. State, 369 So.2d 1262,1271-72 (Ala.Cr.App. 1978), reversed on other grounds, Ex parteWatters, 369 So.2d 1272 (Ala. 1979), this Court addressed an issue similar to that presented here:
 "It is a settled principle of law that a mere extrajudicial confession, uncorroborated by other facts, is insufficient to show the corpus delicti and cannot support a conviction. Matthews v. State, 55 Ala. 187, 28 Am.Rep. 698 (1876); Reynolds v. State, Ala.Cr.App., 346 So.2d 979, cert. denied, Ala., 346 So.2d 986 (1977). However, it is equally as settled that inconclusive facts and circumstances tending prima facie to show the corpus delicti may be aided by the admissions or confession of the accused so as to satisfy the jury beyond a reasonable doubt, and so to support a conviction, although such facts and circumstances, standing alone, would not thus satisfy the jury of the existence of the corpus delicti. Hill v. State, 207 Ala. 444, 93 So. 460 (1922); Bryant v. State, 33 Ala. App. 346, 33 So.2d 402 (1948).
 "Circumstantial evidence may afford satisfactory proof of the corpus delicti. The presentation of facts, from which the jury may reasonably infer that the crime charged was committed, requires the submission of such question to the jury. Johnson v. State, 247 Ala. 271, 24 So.2d 17 (1946); Taylor v. State, 276 Ala. 232, 160 So.2d 641
(1964). Reasonable inferences may furnish a basis for proof beyond a reasonable doubt. Royals v. State, 36 Ala. App. 11, 56 So.2d 363, cert. denied, 256 Ala. 390, 56 So.2d 368 (1952)."
Carnley's ex-wife testified that, at closing time around 8:00 p.m. on August 14, 1977, she locked her husband in the store where he customarily slept. Earlier that afternoon, Mrs. Carnley had seen Carnley's wallet, which contained some undetermined amount of money. Sometime before 6:00 that next morning, Carnley was shot eight times in the back of his head with his own pistol. Covington County Deputy Sheriff testified that Carnley's wallet was not found in the store after the murder. He could tell that Carnley's wallet was missing because of "[t]he outline in the pants in the back pocket."
This circumstantial evidence affords satisfactory proof of the corpus delicti of robbery. Baker v. State, 344 So.2d 547,549 (Ala.Cr.App. 1977) ("We hold that the commission of robbery was sufficiently established by testimony that the victim had his wallet in his back pocket immediately prior to the time of the scuffle, that the appellant hit and tore this pocket, and that following the struggle, the victim's wallet was missing."); Murphy v. State, 52 Ala. App. 490, 294 So.2d 457, cert. denied, 292 Ala. 743, 294 So.2d 462 (1974). These facts provide *Page 360 
sufficient proof that the crime of robbery-intentional murder was committed.
It is an inaccurate principle that " 'a mere confession will not authorize a conviction, unless independent of the confession, the evidence is sufficient to authorize the conclusion beyond a reasonable doubt that the offense has been committed.' " Hill v. State, 207 Ala. 444, 446, 93 So. 460
(1922).
 "[I]t must be considered as settled that inconclusive facts and circumstances tending prima facie to show the corpus delicti may be aided by the admissions or confession of the accused so as to satisfy the jury beyond a reasonable doubt, and so to support a conviction, although such facts and circumstances, standing alone, would not thus satisfy the jury of the existence of the corpus delicti." Hill v. State, 207 Ala. at 446, 93 So. 460 (1922).
"Positive, direct evidence of the corpus delicti is not indispensable to the admissions of confessions." Ryan v. State,100 Ala. 94, 14 So. 868 (1894). "Circumstantial evidence may afford satisfactory proof of the corpus delicti; and if any facts are shown from which the jury may reasonably infer that the crime has been committed, the question must be submitted to the jury, and other evidence tending to implicate the accused is thereby rendered admissible." Hill, 207 Ala. at 446,93 So. 460.
 "[T]he extra-judicial confessions of the prisoner, not corroborated by independent proof of the corpus delicti, will not justify a conviction for felony. . . . Nor must we be understood as affirming that the proof of the corpus delicti must be as full and conclusive as would be essential if there was no confession to corroborate it. . . . Evidence of facts and circumstances, attending the particular offense, and usually attending the commission of similar offenses — or of facts to the discovery of which the confession has led, and which would not probably have existed if the offense had not been committed — or of facts having a just tendency to lead the mind to the conclusion that the offense has been committed — would be admissible to corroborate the confession. The weight which would be accorded them, when connected with the confession, the jury must determine, under proper instructions from the court." Matthews v. State, 55 Ala. 187, 194 (1876).
While a confession is inadmissible as prima facie proof of the corpus delicti, it can be used along with other evidence to satisfy the jury of the existence of the corpus delicti.Bridges v. State, 284 Ala. 412, 417-18, 225 So.2d 821 (1969).
The facts in this case and the reasonable inferences they afford support and corroborate the defendant's confession. That confession was properly admitted into evidence and the verdict of the jury is supported by the evidence.
Our review convinces us that the defendant received a fair trial and that his conviction is due to be affirmed.
AFFIRMED.
All Judges concur.