KELLUM, Judge.
The appellant, Brent Cody Brown, was convicted of murder, a violation of § 13A-6-2, Ala.Code 1975. The circuit court sentenced Brown to 99 years’ imprisonment. The court ordered Brown to pay a $20,000 fine, $10,000 to the crime victims compensation fund, and attorney fees.
The evidence presented at trial established the following pertinent facts. On September 8, 2005, Martha McCoy went to the home of her grandson, Joseph Scott Laney, to check on him after he failed to report to work. Once in the home, McCoy discovered Laney’s dead body and immediately contacted the police. Laney' had been shot several times at close range with a small-caliber weapon.
Scott Clay, a criminal investigator with the Cullman County Sheriffs Office, investigated Laney’s murder. During the investigation, Clay learned from James Low-ry, a friend and coworker of Laney’s, that Laney had loaned money to Brown and that Laney and Brown had had an argument regarding repayment of the loan.
Lowry testified at trial that Brown owed Laney money. Lowry testified that he was with Laney on several occasions when Laney had tried to get in touch with Brown about the money Brown owed him. According to Lowry, in early September 2005, he rode with Laney to Brown’s residence. Lowry testified that Laney got out of the automobile, knocked on the front door, and, after receiving no response, returned to the vehicle. Laney then telephoned Brown and left him a message. Lowry testified that Laney was upset and that in the message he told Brown that “he *734 needed to talk about some money that was owed and to quit avoiding him.” (R. 483.) Lowry understood the conversation to be an effort by Laney to collect money Brown owed him.
After speaking with Lowry, Clay went to Brown’s house to question him. Once at the house, Clay observed several spent casings and some live ammunition in plain view in the front yard. When Clay walked up and onto the front porch of the house, he saw more spent casings and live ammunition. Clay testified that the casings and live ammunition looked to be small caliber, possibly .22 caliber rounds. Finding no one at the house, Clay left to look for Brown. Clay testified that after leaving the house he learned from a patrol officer that a vehicle was parked in Brown’s driveway. Clay returned to Brown’s house, where he found Brown and one of Brown’s friends, Amthony Martin.
Clay testified that Brown gave him written consent to search the house. During the search, Clay found a .22 gauge rifle and a .22 Magnum pistol. During a pat-down search of Martin, a law-enforcement officer found a key for a Toyota vehicle later determined to be a key to Laney’s truck. Law-enforcement officers later discovered property that had been stolen from Laney’s house — a computer system, computer printer, two swords, and a shotgun, among other things — on property on which Martin’s mother and grandfather lived, with whom Martin had lived for some period.
Morris Brown, a firearms and tool-marks examiner with the Department of Forensic Sciences, analyzed bullet fragments taken from Laney’s body during an autopsy. Brown testified that the bullet fragments came from a .22 caliber weapon. However, Brown did not know what kind of .22 caliber weapon was used.
Jimmy Morrow, an investigator with the Cullman County Sheriffs Office, testified that Brown came to the sheriffs office on or about September 8, 2009, and asked for protection because “[h]e was afraid that he might be retaliated against because of being a suspect” in the shooting death of Laney. (R. 924.) Morrow testified that Brown mentioned speaking with his attorney and that he then made arrangements for Brown to contact his attorney. Brown’s attorney then came to the sheriffs office at which time, after reading Brown his Miranda,[1] rights, Morrow interviewed Brown. According to Morrow, Brown initially stated that he had been with Martin on September 7, 2009, and that after hanging out with Martin, Brown returned home to be with his wife. Brown stated that he later woke up and saw Martin parked across the street from his house in Laney’s truck. Morrow testified that Brown later changed his story and told Morrow that he and Martin had discussed robbing Laney “because he had some property that they might could sell.” (R. 927.) Brown changed his story a third time and told Morrow that he drove to Laney’s house and let Martin out of the car so that Martin could go and steal a four-wheeler that belonged to Laney. Brown was subsequently arrested and charged with capital murder in Laney’s death.
While in jail, Brown gave a second statement to Morrow. Morrow testified that, after Brown was readvised of his Miranda rights, Brown stated that he dropped Martin off at Laney’s house so that Martin could rob Laney and then met Martin afterwards, at which time Martin was driving Laney’s truck with other stolen property belonging to Laney also in the truck. *735 Brown knew that Martin had a gun. Brown told Morrow that he and Martin then went to Bailey’s Bridge, that Martin handed him the .22 revolver used to kill Laney, and that Brown then threw the gun off the bridge at Martin’s direction. Martin and Brown then returned to Martin’s trailer and Martin unloaded the stolen property. Martin subsequently burned his clothes in a barrel located on Brown’s property.
After both sides had rested and the court instructed the jury on the law applicable to Brown’s case, the jury found Brown guilty of murder. This appeal followed.
I.
On appeal, Brown contends that the circuit court erred in admitting bullets and bullet casings into evidence, over his objection, that were collected from Brown’s house because, he argues, the bullets and bullet casings were irrelevant. Specifically, Brown argues that the bullets and bullet casings were never connected to Laney’s murder and, therefore, were prejudicial and misleading to the jury.
“The admission or exclusion of evidence is a matter within the sound discretion of the trial court.” Taylor v. State, 808 So.2d 1148, 1191 (Ala.Crim.App.2000). “The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.” Ex parte hoggins, 771 So.2d 1093, 1103 (Ala.2000).
“Rule 402, Ala. R. Evid., provides that ‘[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States or that of the State of Alabama, by statute, by these rules, or by other rules applicable in the courts of this State.’ Rule 401, Ala. R. Evid., defines ‘relevant evidence’ as ‘evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.’ ‘Alabama recognizes a liberal test of relevancy, which states that evidence is admissible “if it has any tendency to lead in logic to make the existence of the fact for which it is offered more or less probable than it would be without the evidence.’” Hayes [v. State], 717 So.2d [30] at 36 [(Ala.Crim.App.1997)], quoting C. Gamble, Gamble’s Alabama Evidence § 401(b). ‘[A] fact is admissible against a relevancy challenge if it has any probative value, however[] slight, upon a matter in the case.’ Knotts v. State, 686 So.2d 431, 468 (Ala.Crim.App.1995), aff'd, 686 So.2d 486 (Ala.1996). Relevant evidence should be excluded only ‘if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.’ Rule 403, Ala. R. Evid. ‘The general rule is that articles which are properly identified and which tend to show the commission of the crime or the manner in which it was committed or elucidate some matter in issue are admissible in evidence for inspection and observation by the jury.’ Beasley v. State, 408 So.2d 173, 179 (Ala.Crim.App.1981).”
Gavin v. State, 891 So.2d 907, 963-64 (Ala. Crim.App.2003).
In the instant case, the bullets and bullet casings found at Brown’s house were from the same caliber gun as the gun used to kill Laney. Although the State could not directly connect the caliber of bullets and bullet casings found at Brown’s house *736 with the fragments found in the victim’s body, the bullets and bullet casings were of the same caliber as the gun Brown told police Martin used to kill Laney and subsequently asked Brown to throw off of the bridge. Given the liberal test applied to determine the relevancy of evidence, the caliber of the bullets and bullet casings found at Brown’s house, and the type of gun Brown threw over the bridge, we cannot say that the circuit court abused its discretion by allowing the bullets and bullet casings into evidence at trial.
II.
Brown next contends that the circuit court erred in denying his motion in limine in which he sought to prohibit the State from eliciting hearsay testimony to the effect that Brown owed Laney money at the time of his death. Specifically, Brown contends that the State was allowed to elicit hearsay testimony that Laney had telephoned Brown days before the murder and demanded that Brown repay the money he owed. The State contends that the testimony at issue is admissible because, it says, it established motive and is relevant.
“The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.” Ex parte Loggins, 771 So.2d at 1103.
Hearsay is defined as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Rule 801(c), Ala. R. Evid. A statement that constitutes hearsay may still be admissible under one of the exceptions to the hearsay rule. One such exception is the “state-of-mind” exception, as set out in Rule 803(8), Ala. R. Evid. Rule 803(3), Ala. R. Evid., provides that “[a] statement of the declarant’s then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)” is admissible as relevant evidence.
In the instant case, the State offered Lowry’s testimony regarding the telephone message Laney left Brown days before Laney’s murder in order to establish motive. The testimony was relevant to establish Brown’s motive to participate in Laney’s murder. Given the foregoing, we conclude that the circuit court did not abuse its discretion in denying Brown’s motion in limine seeking to exclude testimony that Brown owed Laney money.
III.
Brown next contends that the circuit court erred in denying his motion to suppress statements he made to police because, he says, evidence indicated that the statements were induced by the promise of leniency and that Brown suffered from a mental illness at the time he made the statements to police.
At the hearing on Brown’s motion to suppress, the evidence established that Brown gave two statements to law-enforcement officers — one on September 8, 2005, and one on October 28, 2005. At the time he gave those statements, Brown was represented by counsel. Morrow testified that before Brown gave both statements, he advised Brown of his Miranda rights, that Brown waived his rights, and that he gave a statement to law-enforcement officials. Morrow explained that during the interview, he observed Brown’s physical appearance to determine if he was under the influence of an intoxicating substance and concluded that Brown was not under the influence of an intoxicating substance. Morrow testified that Brown was coopera *737 tive and that he voluntarily gave his statement.
Morrow testified that he did not have the authority to make any “deals” with Brown for his cooperation, nor did he make any, and that he was not privy to any negotiations between Brown’s counsel and the district attorney’s office. On cross-examination, Morrow testified that he did have a conversation with Brown about what possible deal had been offered to his attorney. The State subsequently stipulated at the suppression hearing that there was an agreement with Brown’s counsel that the district attorney’s office would not seek the death penalty if Brown gave a true and accurate statement on September 8, 2005.
Dr. Cesar Munoz, a psychiatrist who interviewed Brown in June 2007 and February 2008, diagnosed Brown with chronic schizoaffective disorder. Dr. Munoz testified that Brown had suffered from the disorder since he was 18 years old. Dr. Munoz stated that Brown likely had the mental illness during his interviews in 2005 but was hiding his illness, and, at that time, the illness was untreated. According to Dr. Munoz, Brown could not have knowingly and voluntarily given his statement on September 8, 2005.
Dr. John David Toppins, a clinical and forensic psychologist, interviewed Brown in February 2006 and March 2006 to determine Brown’s competency to stand trial and his mental state at the time of the offense. Following his two interviews with Brown in 2006, Dr. Toppins concluded that Brown was competent to stand trial and that Brown did not exhibit any signs of mental illness. In 2008, Dr. Toppins interviewed Brown again and noted that Brown’s condition had deteriorated. Dr. Toppins concluded that Brown suffered from schizoaffective disorder.
Dr. Toppins reviewed tapes of the statements Brown made to police. After reviewing the tape-recorded statements, Dr. Top-pins concluded that Brown did not show any signs of schizoaffective disorder at that time. Dr. Toppins stated that he did not see Brown display any psychotic thinking, blockage, or mood swings — all characteristics of schizoaffective disorder — in the tape-recorded statements. Dr. Toppins testified that he observed no symptoms in Brown that would interfere with Brown’s ability to knowingly and voluntarily give a statement to law-enforcement officers.
When reviewing a ruling on the voluntariness of a confession, we apply the standard articulated by the Alabama Supreme Court in McLeod v. State, 718 So.2d 727 (Ala.1998):
“For a confession, or an inculpatory statement, to be admissible, the State must prove by a preponderance of the evidence that it was voluntary. Ex parte Singleton, 465 So.2d 443, 445 (Ala.1985). The initial determination is made by the trial court. Singleton, 465 So.2d at 445. The trial court’s determination will not be disturbed unless it is contrary to the great weight of the evidence or is manifestly wrong. Marschke v. State, 450 So.2d 177 (Ala.Crim.App.1984)....
“The Fifth Amendment to the Constitution of the United States provides in pertinent part: ‘No person ... shall be compelled in any criminal case to be a witness against himself.... ’ Similarly, § 6 of the Alabama Constitution of 1901 provides that ‘in all criminal prosecutions, the accused ... shall not be compelled to give evidence against himself.’ These constitutional guarantees ensure that no involuntary confession, or other inculpatory statement, is admissible to convict the accused of a criminal offense. Culombe v. Connecticut, 367 U.S. 568, 81 *738 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); Hubbard v. State, 283 Ala. 183, 215 So.2d 261 (1968).
“It has long been held that a confession, or any inculpatory statement, is involuntary if it is either coerced through force or induced through an express or implied promise of leniency. Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). In Culombe, 367 U.S. at 602, 81 S.Ct. at 1879, the Supreme Court of the United States explained that for a confession to be voluntary, the defendant must have the capacity to exercise his own free will in choosing to confess. If his capacity has been impaired, that is, ‘if his will has been overborne ’ by coercion or inducement, then the confession is involuntary and cannot be admitted into evidence. Id. (emphasis added).
“The Supreme Court has stated that when a court is determining whether a confession was given voluntarily it must consider the ‘totality of the circumstances.’ Boulden v. Holman, 394 U.S. 478, 480, 89 S.Ct. 1138, 1139-40, 22 L.Ed.2d 433 (1969); Greenwald v. Wisconsin, 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77 (1968); see Beecher v. Alabama, 389 U.S. 35, 38, 88 S.Ct. 189, 191, 19 L.Ed.2d 35 (1967). Alabama courts have also held that a court must consider the totality of the circumstances to determine if the defendant’s will was overborne by coercion or inducement. See Ex parte Matthews, 601 So.2d 52, 54 (Ala.) (stating that a court must analyze a confession by looking at the totality of the circumstances), cert. denied, 505 U.S. 1206, 112 S.Ct. 2996, 120 L.Ed.2d 872 (1992); Jackson v. State, 562 So.2d 1373, 1380 (Ala.Crim.App.1990) (stating that, to admit a confession, a court must determine that the defendant’s will was not overborne by pressures and circumstances swirling around him); Eakes v. State, 387 So.2d 855, 859 (Ala.Crim.App.1978) (stating that the true test to be employed is ‘whether the defendant’s will was overborne at the time he confessed’Xempha-sis added).”
718 So.2d at 729 (footnote omitted).
Furthermore,
“ ‘[c]onflicting evidence given at [a] suppression hearing presents a credibility choice for the trial court.’ Atwell v. State, 594 So.2d 202, 212 (Ala.Cr.App.1991), cert. denied, 594 So.2d 214 (Ala.1992). ‘[A] trial court’s ruling based upon conflicting evidence given at a suppression hearing is binding on this Court, and is not to be reversed absent a clear abuse of discretion.’ Jackson v. State, 589 So.2d 781, 784 (Ala.Cr.App. 1991) (citations omitted).”
Rutledge v. State, 651 So.2d 1141, 1144-45 (Ala.Crim.App.1994). “It is true that, absent clear error, the trial court’s credibility choices on issues of fact at suppression hearings are binding on this Court. Powell v. State, 624 So.2d 220 (Ala.Cr.App. 1993).” State v. Hill, 690 So.2d 1201, 1204 (Ala.1996).
In the instant case, the circuit court heard conflicting testimony regarding Brown’s mental state at the time he gave his statements to police. The circuit court was in the best position to resolve the conflicts in the evidence regarding Brown’s mental state at the time he made his statements. Given the conflicts in the evidence regarding Brown’s competency when he gave the statements to police, we decline to second-guess the circuit court, and we conclude that the court did not abuse its discretion in denying the motion to suppress Brown’s statements on the basis that he was mentally ill when he made those statements.
*739 Further, the evidence presented at the suppression hearing established that Morrow did not coerce Brown into making a statement based on a promise of leniency from the district attorney. Although Morrow informed Brown that he believed a possible deal had been offered by the district attorney and presented to Brown’s attorney, Morrow was not privy to the details and did not communicate the details of the deal to Brown. In short, the evidence does not support a conclusion that Brown’s will was overborne at the time of his confession. See McLeod v. State, supra. Therefore, the circuit court did not abuse its discretion in denying Brown’s motion to suppress on the basis that his statements were the result of coercion.
IV.
Brown further contends that the circuit court erred in refusing to give written instructions to the jury regarding the different degrees of murder and erred by informing the jury that the court was not permitted by law to do so. The record indicates that the jury submitted a written question to the court asking for “information of any form that may help us to understand, remember and deliberate all five different charges” from which they had to choose during deliberations. (R. 1129.) The circuit court stated that it answered in the negative. In the presence of the jury, the circuit court informed members of the jury that it could not give any written instructions and that it “is not permitted by law.” (R. 1130.) The record establishes that at no time did Brown object to the circuit court’s decision to decline to give the jury written instructions, much less did Brown object to the circuit court’s purported misstatement of the law.
It is well-settled that issues raised for the first time on appeal are not preserved for appellate review. Woods v. State, 845 So.2d 843, 846 (Ala.Crim.App.2002); Meadows v. State, 773 So.2d 1053, 1054 (Ala.Crim.App.2000). Further,
“No party may assign as error the court’s giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection.”
Rule 21.3, Ala. R.Crim. P. Because Brown made no objection regarding the circuit court’s jury instruction, the issue he now raises on appeal is not preserved for appellate review.
Moreover, even if this issue had been properly preserved for review, Brown would not be entitled to relief. Rule 21.1, Ala. R.Crim. P., provides that “[n]either a copy of the charges against the defendant nor the ‘given’ written instructions shall go to the jury room; provided, however, that the court may, in its discretion, submit the written charges to the jury in a complex case.” Rule 21.1 allows the circuit court to exercise its discretion in submitting the written charges to the jury and allows for the submission of written charges only in complex cases. Regardless of the purported complexity of the issues in this case, we can find no abuse of discretion on the part of the circuit court.
V.
Brown also contends that the jury’s verdict was unsupported by the evidence. Specifically, Brown contends that the evidence was insufficient to show that he intentionally caused Laney’s death and that the evidence against him is all circumstantial.
*740 The Alabama Supreme Court addressed the appellate court’s role in reviewing the sufficiency of the evidence in criminal cases in Ex parte Woodall, 730 So.2d 652 (Ala.1998):
“ ‘In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Cr.App.1984), aff'd, 471 So.2d 493 (Ala.1985).’ Powe v. State, 597 So.2d 721, 724 (Ala.1991). It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt, Pennington v. State, 421 So.2d 1361 (Ala.Cr.App.1982); rather, the function of this Court is to determine whether there is legal evidence from which a rational finder of fact could have, by fair inference, found the defendant guilty beyond a reasonable doubt. Davis v. State, 598 So.2d 1054 (Ala.Cr.App.1992). Thus, ‘[t]he role of appellate courts is not to say what the facts are. [Their role] is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978)(emphasis original).”
730 So.2d at 658.
“ ‘Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.’ White v. State, 294 Ala. 265, 272, 314 So.2d 857, cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). ‘Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.’ Cochran v. State, 500 So.2d 1161, 1177 (Ala.Cr.App.1984), affirmed in pertinent part, reversed in part on other grounds, Ex parte Cochran, 500 So.2d 1179 (Ala.1985).”
White v. State, 546 So.2d 1014, 1017 (Ala. Crim.App.1989).
“ ‘In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir.174); United States v. McGlamory, 441 F.2d 130 (5th Cir.1971); Clark v. United States, 293 F.2d 445 (5th Cir.1961).’”
Bradford v. State, 948 So.2d 574, 578-79 (Ala.Crim.App.2006) (quoting Cumbo v. State, 368 So.2d 871, 874 (Ala.Crim.App. 1978)).
Under current Alabama law, there is no distinction between principals and accessories. See, e.g., Faircloth v. State, 471 So.2d 485, 489 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985) (“Alabama Code § 13A-2-23 (1975) continues the long recognized abolition of the distinction between principals and accessories in Alabama.”). As we noted in Peraita v. State, 897 So.2d 1161, 1210 (Ala.Crim.App.2003):
“Alabama’s accomplice liability statute provides:
“ ‘A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
[[Image here]]
*741 ‘“(2) He aids or abets such other person in committing the offense....’
“ § 13A-2-23, Ala.Code 1975.
“ ‘The words “aid and abet” encompass all assistance by acts, words of encouragement, or support, or presence, actual or constructive, to render assistance should it become necessary. Wright [v. State, 494 So.2d 936 (Ala.Crim.App.1986) ]; Sanders v. State, 423 So.2d 348 (Ala.Cr.App.1982). Actual participation in the crime need not be proved by positive testimony to convict someone of aiding and abetting. “The jury is to determine whether the appellant’s participation exists and the extent of it from the conduct of the parties and all the testimony presented.” Walls v. State, 378 So.2d 1186, 1191 (Ala.Cr.App. 1979), cert. denied, Ex parte Walls, 378 So.2d 1193 (Ala.1980). Such facts as the defendant’s presence in connection with his companionship, and his conduct at, before and after the commission of the act, are potent circumstances from which participation may be inferred.’
“Henry v. State, 555 So.2d 768, 769 (Ala. Crim.App.1989).
“ ‘Any word or act contributing to the commission of a felony, intended and calculated to incite or encourage its accomplishment, whether or not the one so contributing is present, brings the accused within the statute that makes any person concerned in the commission of a felony, directly or indirectly, a principal.... No particular acts are necessary to make one an aider and abettor; the common enterprise or adventure may have been entered into on the spur of the moment without prearrangement or participation.’
“Scott v. State, 374 So.2d 316, 318-19 (Ala.1979).”
In the instant case, there was sufficient evidence, albeit primarily circumstantial, from which the jury could conclude that Brown aided and abetted Martin in the murder of Laney. Several days before the murder, Laney telephoned Brown asking Brown to pay him back money Brown had borrowed. The day Laney’s body was discovered, law-enforcement officers went to Brown’s house and discovered small-caliber bullets and bullet casings consistent with the type of gun used to kill the victim. That same day, Brown and Martin were found together in Brown’s house. In statements given to police, Brown admitted his involvement in Laney’s murder. Specifically, Brown informed police that he and Martin had discussed robbing Laney because he might have some property that they could sell. Brown then drove Martin to Laney’s house and let Martin out of the car. Martin returned from Laney’s house in Laney’s truck carrying items taken from Laney’s house; those items were found at Martin’s family’s home. Brown later met with Martin and threw the gun used to kill Laney over a bridge. A barrel used to burn Martin’s clothes following the murder was found on Brown’s property. Viewing the evidence in a light most favorable to the prosecution and ascending the prosecution all the inferences from the evidence presented, we conclude that Brown’s actions before and after the shooting evidenced his complicity in the intentional murder of Laney. Accordingly, the evidence was sufficient to sustain Brown’s conviction for murder.
VI.
Brown next contends that the statements he gave to police confessing his involvement in Laney’s murder were un *742 corroborated by independent evidence and, therefore, insufficient to connect him with Martin and Laney’s murder. It appears that Brown is arguing that the State failed to establish the corpus delicti of murder independent of his statements to police.
“It has been the rule in Alabama that the State must offer independent proof of the corpus delicti of the charged offense to authorize the admission of a defendant’s confession or inculpatory statement. Robinson v. State, 560 So.2d 1130, 1135-36 (Ala.Cr.App.1989); see C. Gamble, McElroy’s Alabama Evidence, 200.13 (5th ed.1996). ‘“The corpus de-licti consists of two elements: ‘(1) That a certain result has been produced, ... and (2) that some person is criminally responsible for the act.’” Johnson [v. State, 473 So.2d 607, 608 (Ala.Cr.App.1985),] (quoting C. Gamble, McElroy’s Alabama Evidence § 304.01 (3d ed.1977)).’ Spear v. State, 508 So.2d 306, 308 (Ala.Cr.App.1987). “‘Positive, direct evidence of the corpus delicti is not indispensable to the admissions of confessions.” ’ Bracewell v. State, 506 So.2d 354, 360 (Ala.Cr.App.1986), quoting Ryan v. State, 100 Ala. 94, 14 So. 868 (1894). ‘The corpus delicti may be established by circumstantial evidence.’ Sockwell v. State, 675 So.2d 4, 21 (Ala.Cr.App.1993), aff'd, 675 So.2d 38 (Ala.1995), cert. denied, 519 U.S. 838, 117 S.Ct. 115, 136 L.Ed.2d 67 (1996).”
Maxwell v. State, 828 So.2d 347, 357 (Ala. Crim.App.2000).
Additionally, this Court has stated:
“Further, it is well settled that
“ ‘ “inconclusive facts and circumstances tending prima facie to show the corpus delicti may be aided by the admissions or confession of the accused so as to satisfy the jury beyond a reasonable doubt, and so to support a conviction, although such facts and circumstances, standing alone, would not thus satisfy the jury of the existence of the corpus delicti.” ’
“Bush [v. State ], 695 So.2d [70,] 117-18 [(Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.1997) ], quoting Bridges v. State, 284 Ala. 412, 417, 225 So.2d 821, 826 (1969); see also Bracewell [v. State ], 506 So.2d [354,] 360 [ (Ala.Crim.App.1986) ]; Spear [v. State ], 508 So.2d [306,] 308 [ (Ala.Crim.App.1987) ]. ‘While a confession is inadmissible as prima facie proof of the corpus delicti, it can be used along with other evidence to satisfy the jury of the existence of the corpus delicti.’ Bracewell, supra at 360; see also Howell [v. State ], 571 So.2d [396,] 397 [ (Ala.Crim.App.1990) ].”
Maxwell, 828 So.2d at 357-58.
In this case, we find that the State presented sufficient evidence to raise “‘a reasonable inference of the existence of the corpus delicti of the charged crime’ ”— murder. Bush v. State, 695 So.2d 70, 117 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.1997), quoting C. Gamble, McElroy’s Alabama Evidence § 304.01 (4th ed. 1991). The evidence established that Laney sought the repayment of a loan he had given to Brown shortly before he was killed. The day Laney’s body was discovered, law-enforcement officers found small-caliber bullets and bullet casings at Brown’s house that were consistent with the type of gun used to kill Laney. That same day, Brown and Martin were found together at Brown’s house. Items stolen from Laney’s house were subsequently found at the home of Martin’s family. Thus, contrary to Brown’s claim, proof of the corpus delicti was established independent of his inculpatory statements.
*743 VII.
Finally, Brown contends that because of the cumulative effect of the alleged errors discussed above, his substantial right to a fair trial was probably injuriously affected, and thus, his conviction is due to be reversed.
“ ‘The Alabama Supreme Court has set forth the cumulative-error rule as follows: “[Wjhile, under the facts of a particular case, no single error among multiple errors may be sufficiently prejudicial to require reversal under Rule 45, if the accumulated errors have ‘probably injuriously affected substantial rights of the parties,’ then the cumulative effect of the errors may require reversal.” Ex parte Woods, 789 So.2d 941, 942-43 n. 1 (Ala.2001) (quoting Rule 45, Ala. R.App. P.). Applying this standard to Lewis’s allegation of cumulative error, we have scrupulously reviewed the record and find no evidence that the cumulative effect of any of the individually nonreversible errors in this case affected Lewis’s substantial rights at trial.’ ”
Sharifi v. State, 993 So.2d 907, 946-47 (Ala.Crim.App.2008) (quoting Lewis v. State, 24 So.3d 480, 538 (Ala.Crim.App.2006)).
Applying this standard to Brown’s allegation of cumulative error, we have reviewed the record and find no evidence that the cumulative effect of any of the individually nonreversible errors in this case affected his substantial rights at trial.
Based on the foregoing, the circuit court’s judgment is affirmed.
AFFIRMED.
WINDOM and MAIN, JJ., concur. WISE, P.J., concurs in the result. WELCH, J., dissents, with opinion.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).